**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscouts.gov**

In re                                                                              Chapter 11

PARUSA INVESTMENT CORPORATION              Case No. 8:21-bk-03854-MGW

                                                                                   *Jointly Administered*

FICO FINANCIAL CORPORATION                    Case No. 8:21-bk-03853-MGW

          Debtors.
_____/

**DEBTORS' MOTION FOR AN ORDER (I) APPROVING**
**BID PROCEDURES IN CONNECTION WITH THE SALE OF**
**SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS; (II) APPROVING**
**A BREAK-UP FEE AND MINIMUM OVERBID AMOUNT (III) SCHEDULING**
**A SALE HEARING; AND (IV) GRANTING CERTAIN RELATED RELIEF**

Parusa Investment Corporation ("**Parusa**") and FICO Investment Corporation ("**FICO**"

and collectively with Parusa the "**Debtors**"), by and through its undersigned attorneys files this

motion, pursuant to 11 U.S.C. §§ 363, 365, 1107, 1108 and Federal Rules of Bankruptcy Procedure

2002, 6004, and 6006 for an order (I) approving bid procedures in connection with the sale of its

assets (II) approving a break-up fee and a minimum overbid amount; (III) scheduling a sale

hearing; and (IV) granting certain related relief (the "**Motion**").   In support of this Motion the

Debtors state as follows:

**Jurisdiction and Venue**

1.       This court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157

and 1334.  The subject matter of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper in this district pursuant to § 1408.  The statutory predicates for the relief sought

in this Motion include 11 U.S.C. §§ 105, 363, 365, 1107 and 1108 and Rules 2002, 6004 and 6006

of the Federal Rules of Bankruptcy Procedure.

## Preliminary Statement

2.      The Debtors intend to fund distributions to creditors through the sale of one or more of their real estate Properties (defined below and in the attached Bid Procedures), and thus a primary objective of this case is a value-maximizing sale of the Debtors' assets. In furtherance of this goal, the Debtors retained the services of Keen-Summit Capital Partners LLC (the "**Broker**") (Doc. Nos. 7, 49) to market and sell one or more of the Properties.   Through this Motion the Debtors seek the Court's approval to effectuate a § 363 sales process that would allow the Debtors to close one or more sales before December 31, 2021.

3.      The proceeds of any sales will be held in amounts necessary to fund all claims of valid creditors.  As set forth in a number of related pleadings in this case, the Debtors plan to reserve funds sufficient to pay their largest creditor, Xavier Bestenheider, if the Debtors are not successful in post-trial motions and an appeal of a jury trial award entered in favor of this creditor.

## Background

4.      On July 23, 2021 (the "**Petition Date**"), the Debtors filed voluntary petitions for Relief (the "**Petitions**") under chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

6.      On July 19, 2021, the Court entered its Order Granting Debtors' Ex Parte Motion for Order Directing Joint Administration of Related Chapter 11 Cases for Procedural Purposes Only (Doc. No. 20) jointly administering the Debtors' cases.

7.      Information regarding the Debtors' history and business operations, capital

structure and primary indebtedness, and the events leading to the commencement of this case is more fully set forth in the Case Management Summary (Doc. No. 3).

8.　　The Debtors' primary assets are four commercial real estate properties in Florida, Georgia, and Texas with a total cumulative value (as per the Debtors' estimates) of approximately $30 million.

9.　　Parusa is the owner of a parcel of land located at 801 S. State Highway 161, Grand Prairie, Texas 75051, and an adjacent 2.0537-acre vacant parcel of land ("**Grand Prairie Property**").

10.　　FICO owns real property located in the following locations:

　　a.　　5850 W. Cypress Street, Tampa, Florida 33607 ("**Tampa Property**");

　　b.　　3300 Highlands Parkway, Smyrna, Georgia 30082 ("**Smyrna Property**"); and

　　c.　　2015-2039 State Highway 60 East, Lake Wales, Florida, 33853 ("**Lake Wales Property**").

For the purposes of this Motion, the Grand Prairie Property, the Tampa Property and the Smyrna Property are collectively referred to as the "**Properties**."  As set forth in Broker's Application (Doc. No. 7), FICO does not intend to offer the Lake Wales Property for sale at this time.

11.　　The Debtors' Properties generate revenue primarily through rental agreements with various tenants including long-term governmental tenants. Additionally, the Grand Prairie Property generates substantial revenue through the lease of rooftop space to various telecommunications companies for the placement of telecommunication towers.

12.　　The Debtors' Broker will be undertaking an expansive marketing effort for the Properties, set forth in the Broker Application (Doc. No. 7).

13.     With real property that offers investment opportunity in desirable locations, the Debtors anticipate being able to secure one or more potential "Stalking Horse Bidders" for the Properties, either as a joint sale or individual sales, before the proposed auction date set forth below.

14.     Accordingly, the Debtors have filed this Motion to allow the asset sale process to be completed and one or more of the Properties to be sold free clear of any and all liens, claims and encumbrances.

15.     The Stalking Horse[1] for each Property will be required to post a Deposit in the amount of the greater of 5% of a Bid or $250,000 for each Property (the "**Deposit**").

16.      The Debtors have determined that it is in the best interests of their estates and their creditors to maximize the value of their estate's assets through a structured and organized sale of the Properties conducted pursuant to § 363 of the Bankruptcy Code and the attached Bid Procedures.

<u>**Argument**</u>

A.      **Approval of Bidding and Sale Procedures**

17.     The Debtors seek approval of bidding procedures ("**Bid Procedures**") in connection with the sale of the Properties through which the Debtors will solicit and consider initial offers for the purchase of the Properties.

18.     The Debtors, utilizing their business judgment, believe that the Bid Procedures attached as **Exhibit A** will allow the Debtors to receive the highest and best offer available to the Debtors for the sale of the Properties.  The Debtor believes that these Bid Procedures are fair and equitable to interested bidders, the Debtors and the Debtors' creditors while maximizing their

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Bid Procedures, attached as Exhibit A.

value for the benefit of the estates.

19.    The salient terms of the Bid Procedures are as follows:[2]

    A.    ADVISOR: Keen-Summit Capital Partners LLC.   Information about the Properties and about the Auction are available from Advisor.  Advisor can be contacted at:

> Keen-Summit Capital Partners LLC
> ATTN: Harold Bordwin
> Telephone: (646) 381-9201
> Email: hbordwin@keen-summit.com

> With a copy to:

> Keen-Summit Capital Partners LLC
> 1 Huntington Quadrangle, Suite 2C04
> Melville, NY 11747
> ATTN: Matt Bordwin and Chris Mahoney
> Telephone: (646) 381-9202 and (646) 381-9205, respectively
> Email: mbordwin@keen-summit.com and
> cmahoney@keen-summit.com, respectively

    B.    AUCTION DATE: December 2, 2021, at 10:00 am EST, or as subsequently noticed.

    C.    AUCTION VENUE: Underwood Murray, P.A., 100 N Tampa St. Suite 2325, Tampa, FL 33602, or as subsequently noticed.   The Seller reserves the right to conduct the Auction using Zoom or a similar electronic platform.

    D.    BACK-UP BID: The Qualified Bid selected by Seller at the conclusion of the Auction as the second-best Bid.

    E.    BACK-UP BIDDER: The Bidder who submitted the Back-up Bid.  The Back-Up Bidder's Deposit is held pursuant to the provisions below and, in the event that the Successful Bidder fails to close, the Back-up Bidder is obligated to close.

    F.    BID: A binding offer to purchase one of the Properties.  All Bids are irrevocable pursuant to the terms set forth below.

    G.    BIDDER: A person or entity that submits a Bid.

---

[2] For a full description of the Bid Procedures, interested parties should refer to Exhibit A.  In the event of any discrepancy between the Bid Procedures attached and the summary contained in this Motion, the terms contained in Exhibit A shall control in all respects.

H.    BID DEADLINE: November 30, 2021, at 4:00 p.m. EST., or as subsequently noticed.

I.    CLOSING: Closing shall be the date upon which the parties to a Real Estate Purchase Contract exchange documents completing the sale transaction contemplated therein, following the moment upon which all conditions and obligations complete such transaction have been satisfied, other than those conditions that by their nature are satisfied at the Closing itself, which Closing shall occur within three business (3) days of the entry of an order approving the Successful Bidder and Back-up Bidder, unless otherwise required by the Title Insurer, then in no event later than three business (3) days following the entry of a Final Order.

J.    COURT: United States Bankruptcy Court for the Middle District of Florida (Tampa Division).

K.    DATA: Information provided by Seller to Bidders or prospective Bidders subject to the conditions and limitations set forth in these Bidding Procedures.  This information may include title work, surveys, and other data about one of the Properties.

L.    DEPOSIT: the greater of 5% of a Bid or $250,000, per Property.  All deposits shall be held and disbursed consistent and pursuant to Court Order and the Bid Procedures.

M.    ESCROW AGENT: The law firm of Buchanan Ingersoll & Rooney, P.C. ("**Buchanan**" or "**BIPC**"), located at 401 E Jackson St. Suite 2400, Tampa, Florida, 33602, ted.tamargo@bipc.com; 813-769-7925, or such other designated person in a Real Estate Purchase Agreement.

N.    FINAL ORDER: A court order, the implementation, operation or effect of which has not been stayed and as to which order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

O.    IRREVOCABILITY PERIOD:  That period of time which commences upon each Bidder's submission of a Bid and which concludes at the earlier of (i) the Closing, or (ii) 30 days after the conclusion of the Auction (as adjourned), but in no event later than January 17, 2022.

P.    OFFER & BIDDER REGISTRATION FORM: The form of document attached hereto as **Exhibit A**.

Q.   PROPERTIES: The Properties as further defined in the Real Estate Purchase Contract are:

a)   The "**Grand Prairie Property**," located at 801 State Highway 161, Grand Prairie, TX 75051;

b)   The "**Tampa Property**," located at 5850 W. Cypress Street, Tampa, Florida 33607; and

c)   The "**Smyrna Property**," located at 3300 Highlands Parkway, Smyrna, Georgia 30082.

Reference to "**Property**" shall mean each Property individually, and referred to collectively in more than one, shall mean "**Properties**" collectively when a Bidder seeks to bid on more than one Property.

R.   QUALIFIED BID: A Bid that satisfies the requirements set forth below. Bids shall be qualified on a Property-by-Property basis unless otherwise indicated.

S.   QUALIFIED BIDDER: A Bidder who submits a Qualified Bid or submits a contract otherwise acceptable to the Seller.

T.   REAL ESTATE PURCHASE CONTRACT:  The form of agreement to be approved by the Court as the sale contract for a Property, subject to acceptable redline changes.[3]

U.   REQUIRED BID DOCUMENTS: The Required Bid Documents are those documents that a Bidder is required to submit by the Bid Deadline, as further described below.

V.   SALE HEARING: A hearing in the Court on December 6, 2021 (or as subsequently noticed) at which the Seller will seek an order approving the sale of one or more of the Properties.

W.   SALE ORDER: An order of the Court authorizing a sale of one or more of the Properties to the Successful Bidder.

X.   SELLER: Parusa Investment Corporation or FICO Financial Corporation, depending on the Property.

Y.   SELLER'S COUNSEL:

1.   Scott A. Underwood ("**Underwood**"), of Underwood Murray, P.A., 100 N Tampa, St., Suite 2325, Tampa, FL 33602, 813-540-8402;

---

[3] A form of contract, which will be amended per applicable state, will be attached to the Bid Procedures once it is finalized and approved by the Court.

sunderwood@underwoodmurray.com;

    2.    Ted Tamargo ("**Tamargo**") of Buchanan Ingersoll & Rooney, P.C., 401 E Jackson St., Suite 2400, Tampa, FL 33602; 813-769-7925; ted.tamargo@bipc.com;.

  Z.    STALKING HORSE or STALKING HORSE BIDDER: Means the buyer of one of the Properties who shall be a Qualified Bidder and selected by the Seller as the purchaser of one of the Properties, subject to higher and better bids. The Stalking Horse shall have the right to appear in Court as the Stalking Horse Bidder and shall have standing to expedite the sale of one of the Properties, subject to Court approval.

  AA.  SUCCESSFUL BID: At the conclusion of the Auction, the Qualified Bid selected by the Seller as the winning bid for one of the Properties based upon price, financial condition, experience, and such other factors as the Seller may deem relevant, as further detailed below.

  BB.  SUCCESSFUL BIDDER: The Bidder who submitted the Successful Bid.

**B.**    **Break-Up Fee and Minimum Overbid Amount**

20.    The Debtors seek to find one or more Stalking Horse Bidders for the Properties and, to induce a Stalking Horse to provide a Stalking Horse bid, the Debtors seek to negotiate a break-up fee and minimum overbid amount. In the event a Stalking Horse does not become the Successful Bidder, the Debtor shall pay the Stalking Horse the sum of 2% of the Stalking Horse Purchase Price (the "**Break- Up Fee**") per Property to compensate the Stalking Horse Bidder for the effort, burden and outlay of resources in becoming the Stalking Horse Bidder and negotiating the Stalking Horse Purchase Price. The Debtors submit that the Break-Up Fee amount is reasonable in light of the significant time, effort, and expense that the Debtors anticipate a Stalking Horse will need to expend to conduct its due diligence and negotiate a Stalking Horse offer, which will be of value to any competing Bidder.

21.    The Debtors anticipate that they will set acceptable incremental bidding requirements for each Property based on the Stalking Horse bids obtained and the needs for such incremental bids at the time of the Auction to achieve the highest and best Bids. In the event of a

competitive Auction including a Stalking Horse, the Debtors request that the first competitive bid shall exceed the Stalking Horse Bidder's Qualified Bid by no less than the amount of the Break-Up Fee plus $100,000.

**C.    Basis for Court Approval**

22.    Section 11 U.S.C. § 363(b)(1) permits the Debtors to sell property of the estate, other than in the ordinary course of business after notice and a hearing.  A proposed sale under § 363(b)(1) is evaluated under the business judgment test. *In re Diplomat Construction, Inc.*, 481 B.R. 215, 218 (Bankr. N.D. Ga. 2012).  A sale should be approved where "the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith." *In re Phoenix Steel Corp.*, 82 B.R. 334, 336 (Bankr. D. Del. 1987).

23.    The Debtors intend to sell one or more Properties pursuant to a Real Estate Purchase Contract which the Debtors will propose as a form asset purchase agreement to be utilized in connection with Qualified Bids.  The Debtors will supplement this Motion with a final proposed Real Estate Purchase Contract prior to the hearing to consider the Motion.

24.    The Bid and Sale Procedures already drafted and proposed include among its provisions the deadline for submitting Bids, the minimum Deposit required to submit a Bid, a period for interested parties to submit a Bid, and the minimum overbid amount, among other relevant provisions.  The Bid and Sale Procedures have been proposed in good faith and are fair and equitable to all parties in interest.

25.    In the exercise of their business judgment, the Debtors believe that the sale of the Properties pursuant to the terms set forth herein will maximize the value of the assets of the Debtors' estates.

26.    The Debtors also request that this Court find, at the sale hearing, that any Stalking

Horse Bidder (or any other Successful Bidder and Backup Bidder) is a good faith purchaser entitled to the protections of §§ 363(m) and (n) of the Bankruptcy Code.

27.     In addition, the Debtors seek authority to take all actions and execute all documents that, pursuant to the Debtors' business judgment, they deem reasonable, necessary, and/or desirable to effectuate the relief requested herein.

### Notice

28.     The Debtors propose to send the Bid Procedures order to (a) parties on the Local Rule 1007-2 Parties in Interest List, (b) all parties which, to the knowledge of the Debtors, have or have asserted liens on the Properties; (c) all counterparties to contracts; and (d) any party that has expressed or subsequently expresses an interest to the Debtors in acquiring any or all of the Properties.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order granting the Motion, approving the Bid Procedures, approving the notice terms set forth above, allowing the Debtors to proceed with marketing and sale of the Properties free and clear of all claims lien and encumbrances under § 363, and for all other relief that the Court deems just and proper.

Dated:  September 17, 2021.

Respectfully submitted,

/s/ Megan W. Murray
Scott A. Underwood
Florida Bar Number: 0730041
Megan W. Murray
Florida Bar Number: 0093922
Adam M. Gilbert
Florida Bar Number: 1011637
UNDERWOOD MURRAY, P.A.
Regions Building
100 N Tampa St., Suite 2325
Tampa. Fl. 33602
Tel: (813)-540-8401 / Fax: (813) 553-5345

Email: sunderwood@underwoodmurray.com
mmurray@underwoodmurray.com
agilbert@underwoodmurray.com
*Counsel to the Debtors*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing, that was filed with the Clerk of Court, has been furnished electronically to those parties registered to receive service via CM/ECF on September 17, 2021.

/s/ Megan W. Murray, Esq.
Fla. Bar No. 0093922

# EXHIBIT A

## BIDDING PROCEDURES

### I.  DEFINITIONS

A.  ADVISOR: Keen-Summit Capital Partners LLC.  Information about the Properties and about the Auction are available from Advisor.  Advisor can be contacted at:

> Keen-Summit Capital Partners LLC
> ATTN: Harold Bordwin
> Telephone: (646) 381-9201
> Email: hbordwin@keen-summit.com

> With a copy to:

> Keen-Summit Capital Partners LLC
> 1 Huntington Quadrangle, Suite 2C04
> Melville, NY 11747
> ATTN: Matt Bordwin and Chris Mahoney
> Telephone: (646) 381-9202 and (646) 381-9205, respectively
> Email: mbordwin@keen-summit.com and
> cmahoney@keen-summit.com, respectively

B.  AUCTION DATE: December 2, 2021, at 10:00 am EST, or as subsequently noticed.

C.  AUCTION VENUE: Underwood Murray, P.A., 100 N Tampa St. Suite 2325, Tampa, FL 33602, or as subsequently noticed.   The Seller reserves the right to conduct the Auction using Zoom or a similar electronic platform.

D.  BACK-UP BID: The Qualified Bid selected by Seller at the conclusion of the Auction as the second-best Bid.

E.  BACK-UP BIDDER: The Bidder who submitted the Back-up Bid.  The Back-Up Bidder's Deposit is held pursuant to the provisions below and, in the event that the Successful Bidder fails to close, the Back-up Bidder is obligated to close.

F.  BID: A binding offer to purchase one of the Properties.  All Bids are irrevocable pursuant to the terms set forth below.

G.  BIDDER: A person or entity that submits a Bid.

H.  BID DEADLINE: November 30, 2021, at 4:00 p.m. EST., or as subsequently noticed.

I.  CLOSING: Closing shall be the date upon which the parties to a Real Estate Purchase Contract exchange documents completing the sale transaction contemplated therein, following the moment upon which all conditions and obligations complete such transaction have been satisfied, other than those conditions that by their nature

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 2 of 16

    are satisfied at the Closing itself, which Closing shall occur within three business (3) days of the entry of an order approving the Successful Bidder and Back-up Bidder, unless otherwise required by the Title Insurer, then in no event later than three (3) business days following the entry of a Final Order.

J.    COURT: United States Bankruptcy Court for the Middle District of Florida (Tampa Division).

K.    DATA: Information provided by Seller to Bidders or prospective Bidders subject to the conditions and limitations set forth in these Bidding Procedures.  This information may include title work, surveys, and other data about one of the Properties.

L.    DEPOSIT: the greater of 5% of a Bid or $250,000, per Property.  All deposits shall be held and disbursed consistent and pursuant to Court Order and the Bid Procedures.

M.    ESCROW AGENT: The law firm of Buchanan Ingersoll & Rooney, P.C. ("**Buchanan**" or "**BIPC**"), located at 401 E Jackson St. Suite 2400, Tampa, Florida, 33602, c/o ted.tamargo@bipc.com; 813-769-7925, or such other designated person in a Real Estate Purchase Contract.

N.    FINAL ORDER: A court order, the implementation, operation or effect of which has not been stayed and as to which order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

O.    IRREVOCABILITY PERIOD:  That period of time which commences upon each Bidder's submission of a Bid and which concludes at the earlier of (i) the Closing, or (ii) 30 days after the conclusion of the Auction (as adjourned), but in no event later than January 17, 2022.

P.    OFFER & BIDDER REGISTRATION FORM: The form of document attached hereto as **Exhibit A**.

Q.    PROPERTIES: The Properties as further defined in the Real Estate Purchase Contract are:

    a)    The "**Grand Prairie Property**," located at 801 State Highway 161, Grand Prairie, TX 75051;

    b)    The "**Tampa Property**," located at 5850 W. Cypress Street, Tampa, Florida 33607; and

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 3 of 16

    c)    The "**Smyrna Property**," located at 3300 Highlands Parkway, Smyrna, Georgia 30082.

Reference to "**Property**" shall mean each Property individually, and referred to collectively in more than one, shall mean "**Properties**" collectively when a Bidder seeks to bid on more than one Property.

R.    QUALIFIED BID: A Bid that satisfies the requirements set forth below. Bids shall be qualified on a Property-by-Property basis unless otherwise indicated.

S.    QUALIFIED BIDDER: A Bidder who submits a Qualified Bid or submits a contract otherwise acceptable to the Seller.

T.    REAL ESTATE PURCHASE CONTRACT:  The form of agreement to be approved by the Court as the sale contract for a Property, subject to acceptable redline changes.[1]

U.    REQUIRED BID DOCUMENTS: The Required Bid Documents are those documents that a Bidder is required to submit by the Bid Deadline, as further described below.

V.    SALE HEARING: A hearing in the Court on December 6, 2021 (or as subsequently noticed) at which the Seller will seek an order approving the sale of one or more of the Properties.

W.    SALE ORDER: An order of the Court authorizing a sale of one or more of the Properties to the Successful Bidder.

X.    SELLER: Parusa Investment Corporation or FICO Financial Corporation, depending on the Property.

Y.    SELLER'S COUNSEL:

1.    Scott A. Underwood ("**Underwood**"), of Underwood Murray, P.A., 100 N Tampa, St., Suite 2325, Tampa, FL 33602, 813-540-8402; sunderwood@underwoodmurray.com;

2.    Ted Tamargo ("**Tamargo**") of Buchanan Ingersoll & Rooney, P.C., 401 E Jackson St., Suite 2400, Tampa, FL 33602; 813-769-7925; ted.tamargo@bipc.com;.

---

[1] A form of contract, which will be amended per applicable state, will be attached to the Bid Procedures once it is finalized and approved by the Court.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 4 of 16

Z.      STALKING HORSE or STALKING HORSE BIDDER: Means the buyer of one of the Properties who shall be a Qualified Bidder and selected by the Seller as the purchaser of one of the Properties, subject to higher and better bids.  The Stalking Horse shall have the right to appear in Court as the Stalking Horse Bidder and shall have standing to expedite the sale of one of the Properties, subject to Court approval.

AA.     SUCCESSFUL BID: At the conclusion of the Auction, the Qualified Bid selected by the Seller as the winning bid for one of the Properties based upon price, financial condition, experience, and such other factors as the Seller may deem relevant, as further detailed below.

BB.     SUCCESSFUL BIDDER: The Bidder who submitted the Successful Bid.

II.     **STEP ONE - Bid Deadline: November 30, 2021 (or as subsequently noticed)**

A.      The Seller seeks to solicit bids ("**Bids**") for the sale of the Grand Prairie Property, the Tampa Property and the Smyrna Property, individually or collectively, as set forth above.  To solicit the highest and best offers, the Seller is conducting the Auction herein described.  The first step is the submission of binding Bids in the form of the "**Required Bid Documents**" on or before the Bid Deadline.  Seller will review the Required Bid Documents, and based upon that review, Seller will identify those Bidders who have submitted "**Qualified Bids**."  Only those Bidders who have submitted Qualified Bids, if any, will be authorized to participate in the Auction.

B.      For each Property you wish to bid on, you must submit the Required Bid Documents (including the Deposit) so as to be actually received by no later than 4:00 P.M., EST, on November 30, 2021 (the "**Bid Deadline**").  The original set of the Required Bid Documents (including the Deposit) must be submitted to the Seller's Counsel.  A complete copy of the Required Bid Documents must also be submitted to Advisor and to Buchanan to ted.tamargo@bipc.com.

C.      Due diligence information can be obtained by contacting Advisor.  Seller and Advisor shall not be obligated to furnish any Data after the Bid Deadline or to any party that the Seller determines, in its sole discretion, is not reasonably likely to be a Qualified Bidder.

III.    **REQUIRED BID DOCUMENTS**

A.      The following documents which, taken together, constitute the "**Required Bid Documents**:"

i.      Offer: A written "**Offer and Bidder Registration Form**" in the form attached hereto as **Exhibit A**.  Pursuant to the terms of such form, the offer

must expressly state that the Bidder's offer is all cash, on an as-is, where-is basis and irrevocable during the Irrevocability Period.

ii.   Contract: An executed and fully completed Real Estate Purchase Contract in the form annexed hereto as **Exhibit B**, in redline format highlighting any discrepancies from the form.  The contract, as tendered, may not contain any contingencies, including, but not limited to due diligence and financing contingencies.

iii.   Financials:  Written evidence of a commitment for financing or other evidence of ability to consummate the transaction.

iv.   Other Information:  Any other information that the Seller may reasonably request which would enable Seller to evaluate, among other things, the Bidder's ability to consummate a transaction, the Bidder's legal authority to Bid, and/or the Bidder's ability to fulfill its obligations in connection therewith.

v.   Deposit: A wire for the Deposit in the amount of the greater of 5% of a Bid or $250,000, per Property.  All deposits shall be held and disbursed consistent and pursuant to Court Order and the Bid Procedures.

B.   Confidentiality: By submitting a Bid, each Bidder agrees to maintain as confidential and to not disclose to third parties both the fact that Bidder submitted a Bid and the terms and conditions of such Bid. Bidder shall continue to be bound by the terms and conditions of the Seller's Non-Disclosure Agreement.

IV.   <u>**QUALIFIED BIDS**</u>

Unless such requirement is waived by the Seller:

A.   ONLY BIDDERS THAT HAVE SUBMITTED QUALIFIED BIDS SHALL BE ELIGIBLE TO PARTICIPATE IN THE AUCTION; and

B.   In order for a Bid to be a "**Qualified Bid**," a Bid shall:

i.   Include the Deposit and each of the Required Bid Documents, executed and in form and substance acceptable to the Seller;

ii.   Be a good faith, bona fide offer to purchase one of the Properties;

iii.   Not be contingent;

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 6 of 16

    iv.      Be actually received by the Bid Deadline;

    v.      Demonstrate to the Seller the Bidder's ability to consummate promptly the purchase of one of the Properties;

    vi.      Be irrevocable during the Irrevocability Period; and

    vii.      Be one of the three highest Bids or be within twenty percent (20%) of the highest Bid.

C.      Failure of a Bidder to fully, accurately, and promptly respond to Seller's requests for additional information may result in a Bid no longer being considered a Qualified Bid.

D.      Following the receipt of Bids, Seller will ascertain, in the exercise of its reasonable business judgment, whether a Bid is a Qualified Bid, taking into account, among other things, the quality of the Required Bid Documents, the Bidder's experience, financial capacity to close, reputation in the marketplace, etc.

E.      By 9:00 a.m. EST on December 1, 2021, Advisor will notify each Bidder at the email address set forth on the Offer & Bidder Registration Form if it is a Qualified Bidder.

## V.    <u>DEPOSIT REQUIREMENT</u>

A.      Each Bidder shall tender a Deposit with the Required Bid Documents to Buchanan. The Successful Bidder will be required to tender additional Deposits, as set forth below.

B.      The Deposit shall be by <u>wire</u> payable to Escrow Agent pursuant to wire instructions to be provided. Escrow Agent shall have no liability to any party in connection with its services with respect to Deposits except for willful misconduct, gross negligence or bad faith.

C.      In the event that the Seller does not consummate a sale of one of the Properties, for any reason (other than the Bidder's breach or Bidder's failure to consummate a sale), the Seller's sole obligation and liability shall be to refund the Deposit to the Bidder.

D.      No Bid shall be deemed to be "accepted" by Seller unless and until the Court has entered the Sale Order.

## VI.    <u>SELLER'S PRE-AUCTION DISCRETION</u>

A.      Seller reserves the right to negotiate any offer made to purchase one of the

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 7 of 16

Properties, and to determine whether it is beneficial to the estates and the creditors to enter into a stalking-horse agreement for one of the Properties prior to the Auction or to withdraw one of the Properties from the Auction. The Seller retains the complete discretion in revising these Bid Procedures in accordance with its directive to maximize the value of the sale of the Properties. Seller reserves the right to cancel the sale and Auction if it determines, in its sole and absolute discretion, that a sale will not maximize value to the estates.

B.    <u>Stalking Horse</u>. Seller may enter into Real Estate Purchase Contract for the sale of a one or more of the Properties, with a potential Bidder (the **"Stalking Horse Bidder"**) prior to the Auction. The following procedures and protections shall apply with respect to a Stalking Horse Bidder:

i.    Selection of Stalking Horse Bidder. The Seller shall have authority to select a Stalking Horse Bidder. A Bidder shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a Real Estate Purchase Contract by the Bid Deadline, (ii) it tenders a Qualified Bid, and (iii) the Qualified Bid is in an amount acceptable to Seller. In the event that Seller selects a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and to have submitted a Qualified Bid at a fixed amount (the "**Stalking Horse Purchase Price**").

ii.    Bid Protections. If Seller consummates a transaction in a greater amount (consistent with these Bid Procedures) as a product of the Auction (other than a transaction with the Stalking Horse Bidder), then the Stalking Horse Bidder shall be entitled to a "**Break-Up Fee**" of 2% of the Stalking Horse Purchase Price to compensate the Stalking Horse Bidder for the effort, burden and outlay of resources in becoming the Stalking Horse Bidder and negotiating the Stalking Horse Purchase Price.

iii.    Competitive Bid. In the event of a competitive Auction, including a Stalking Horse, the first competitive bid shall exceed the Stalking Horse Bidder's Qualified Bid by no less than the amount of the Break-Up Fee plus $100,000.

**VIII.    <u>STEP TWO - The Auction: December 2, 2021 at 10:00 am EST</u>**

A.    Provided that one or more of the Properties is not already sold or otherwise disposed of, then Seller shall Auction such Properties on the Auction Date at the Auction Venue. The Seller reserves the right to change the location and time of the Auction. Only the Bids of Qualified Bidders will be considered at the Auction and Seller shall have no obligation to admit to the Auction any party who it does not deem a Qualified Bidder.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 8 of 16

B.    Based upon the terms of the Qualified Bids, the level of interest expressed in the Properties, and such other information as the Seller may determine to be relevant, Seller shall have the right to amend the procedures set forth herein and to adopt, at any time, in its sole and absolute discretion, such rules for the bidding process which it determines will better promote the goals of the bidding process.  Among other things, Seller shall determine, in the exercise of its sole and absolute discretion, acceptable bidding increments, which may be modified by the Seller during the Auction. Seller may offer the Properties for bidding in successive rounds; may conduct a silent Auction; may conduct an open Auction; or may otherwise conduct the Auction in the manner that it deems most appropriate for soliciting the highest and best Bids.

C.    The Seller shall receive Bids at the Auction for the Properties with the intention of selling the Properties to the Successful Bidder.  At the conclusion of the Auction or a later point to be determined by the Seller, the Seller will determine which Bid is the highest and best Bid and which Bid is the next highest and best Bid and, based upon that determination, will announce the Successful Bid and the Back-up Bid, respectively.

D.    Seller's determination of what constitutes the first and second "highest and best" Bids will be based upon the exercise of Seller's discretion and may take into consideration price, modifications to the Real Estate Purchase Contract, closing risk, risk of delay, financial condition, experience, and such other factors as Seller may deem relevant.

E.    At the conclusion of the Auction, both the Successful Bidder and the Back-up Bidder shall update and re-execute their respective Real Estate Purchase Contracts and any other agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid and the Back-up Bid were made.

F.    Formal rejection of a Bid by the Seller will not occur unless and until (i) the Seller expressly rejects a Bid in writing; or (ii) the Irrevocability Period lapses.

G.    The Successful Bidder shall supplement its Deposit so that immediately following the Auction, its aggregate deposit being held by Seller equals ten percent (10%) of the Successful Bid.  All supplemental Deposits shall be paid by wire to Escrow Agent.  All disputes regarding Deposits shall be decided by the Bankruptcy Court.

H.    The establishment of a Successful Bid and a Back-up Bid does not release any Bidder from its obligations and all Bids remain open and irrevocable for the duration of the Irrevocability Period.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 9 of 16

IX.     **STEP THREE – Court Approval: Sale Hearing Date, Approximately December 6, 2021**
        **(Subject to change)**

A.      Any objection to the sale must be filed with the Court on or before December 3,
        2021.

B.      The Sale Hearing will be held in the Court, at which time the Court will approve the
        Successful Bidder and Back Up Bidder.

C.      Timely filed objections to the proposed sale may be heard by the Court at that time.

D.      Application and Return of Deposits:

    i.      Seller reserves the right to cause the Escrow Agent to hold the Deposit of the
            Backup Bidder until expiration of the Irrevocability Period.

    ii.     Seller shall return the Deposits of all Bidders other than the Successful
            Bidder and the Backup Bidder within five (5) business days of the
            Bankruptcy Court's Final Order approving the Successful Bidder and Backup
            Bidder.

    iii.    If the Successful Bidder closes, Seller shall apply the Successful Bidder's
            Deposit to the Successful Bidder's purchase price at closing and Escrow
            Agent shall return the Backup Bidder's deposit within five (5) business days
            of that closing.

    iv.     If the Successful Bidder fails to close and the Backup Bidder closes, Seller
            shall apply the Backup Bidder's Deposit to the Backup Bidder's purchase
            price at closing.

X.      **STEP FOUR - The Closing**

A.      The Closing(s) shall occur in accordance with the terms of the Real Estate Purchase
        Contract and the Sale Order.  WITH RESPECT TO THE CLOSING, TIME OF
        PERFORMANCE BY THE SUCCESSFUL BIDDER IS OF THE ESSENCE.

B.      In the event of the failure by the Successful Bidder to consummate a sale of one of
        the Properties, the Back-up Bidder for such Property shall be deemed the Successful
        Bidder without further Order of the Court and shall proceed to Closing no later than
        two (2) weeks after the time set for closing by the Successful Bidder in section
        I(I)(Closing), following Seller's tender of a notice to the Back-up Bidder at the
        address set forth on the Bidder Registration Form.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 10 of 16

C.      The Seller shall be entitled to retain the Deposit (as supplemented) of any Successful
        Bidder who fails to close because of a breach or failure by such Successful Bidder,
        and such Deposit shall be deemed forfeited by such defaulting Successful Bidder,
        shall not be credited against the purchase price for the benefit of a Back-up Bidder,
        and Seller specifically reserves the right to seek all available damages from the
        defaulting Bidder.

D.      The balance of the purchase price shall be paid by the Successful Bidder by wire
        transfer.

E.      The provisions in this Section X shall apply to any Backup Bidder who becomes a
        Successful Bidder.

## XI.      **OTHER PROVISIONS**

Disclaimer

A.      Any sale or other disposition of all or a portion of the Properties shall be without
        representations or warranties of any kind, nature or description by the Seller, its
        agents or representatives.  The Properties shall be transferred on an "as is" and
        "where is" basis.

        i.      Any and all Data provided to prospective Bidders:

                a)      has been prepared for informational purposes only;

                b)      has been prepared from materials supplied to the Seller by third
                        parties; and

                c)      is being furnished solely for use by Bidders in considering their
                        interest in acquiring the Properties;

B.      By accepting Data from the Seller, the Seller's Counsel, through the bankruptcy case
        post-petition, and/or through the Advisor, the recipient acknowledges and agrees that
        the Data has been prepared to assist the recipient in making its own evaluation of the
        Properties and the Data does not purport to be all-inclusive or to contain all of the
        information that a Bidder may desire.  In all cases, Bidders should conduct their own
        investigation and analysis of the Properties, conduct site inspections, and scrutinize
        all of the Data. Advisor has assumed no responsibility for independent verification of
        any of the Data and has not in fact in any way audited such information.  Seller,
        Seller's Counsel and Advisor are not making nor will they make and expressly
        disclaim making any written or oral statements, representations, warranties, promises
        or guarantees, whether express, implied or by operation of law or otherwise, with

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 11 of 16

respect to the Properties and with respect to the accuracy, reliability or completeness of any Data, except as expressly stated in a contract executed by Seller. Seller, Seller's Counsel and Advisor and their respective partners, officers, directors and employees, affiliates and representatives, expressly disclaim any and all liability based on or relating or pertaining to any written or oral statements, financial information, projections, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise.

C.      Each Bidder, by submitting a Bid for one of the Properties, shall be deemed to acknowledge and represent:

    i.      that it is bound by these Bidding Procedures;

    ii.      that it had an opportunity to inspect and examine the Properties and to review all pertinent documents and information with respect to the Properties prior to making its offer and that it relied solely on that review and upon its own investigation and inspection of the Properties in making its Bid; and

    iii.      that it is not relying upon any written or oral statements, representations, or warranties of the Seller, or the Seller's agents or representatives.

    v.      All of the Seller's right, title and interest in and to one of the Properties shall be assigned and sold, free and clear of all liens, claims, encumbrances and security interests, which shall attach to the net proceeds received by the Seller as a result of the sale with the same force and effect that they now have, subject to further Order of the Court.

D.      The sale of the Properties shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in or on the Properties except as set forth in the Real Estate Purchase Contract.

E.      Except to the extent of the applicability of section 1146(c) of the Bankruptcy Code, all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of the Properties shall be the sole responsibility of the Successful Bidder and shall be paid to the Seller at the Closing.

F.      The Seller, at or before the Auction, may impose such other and additional terms and conditions as it may determine to be in the best interests of its estate, the creditors and other parties' interest.

G.      The Seller may reject any Bid that in its sole discretion Seller deems to be: (i) inadequate or insufficient; or (ii) contrary to the best interest of the Seller's estate and creditors. Such rejection may be made at any time prior to Court Approval.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 12 of 16

H.    Any and all disputes related or pertaining to or resulting or arising from the marketing process, the Auction, the sale of the Properties, and/or the conduct of the Seller, Advisor and/or any of Seller's other professional advisors shall be adjudicated solely by the Court.  The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Court for all such matters.

I.    Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder or agent acting on another's behalf.  Bidder acknowledges that it will not look to the Seller, Seller's Counsel and/or Advisor and their respective representatives for the payment of any fee or commission. Seller is compensating Advisor pursuant to a separate Bankruptcy Court approved agreement.  In addition, Bidder agrees to be responsible for the payment of any fee, commission or other compensation payable to any broker, finder or agent who alleges it has dealt with or through Bidder. Bidder hereby agrees to indemnify, defend and hold the Seller, Seller's Counsel and Advisor and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any claim or claims by any broker, finder or similar agent for commissions, fees or other compensation who allege that they have dealt with the Seller, Seller's Counsel and/or Advisor in connection with the Properties.  Bidder understands that the Seller, Seller's Counsel and Advisor and their respective representatives have not agreed to pay any brokerage commissions, finder's fee or other compensation in connection with Bidder's possible purchase other than as set forth below in Section XI(J). If Bidder is working with a broker or finder other than Advisor (as defined above), Bidder agrees that Bidder shall be responsible for the payment of any fees, if any, to such broker or finder, other than as set forth below.

J.    With respect to the foregoing paragraph, Bidder acknowledges that Advisor shall receive from Seller as compensation for the sale of each Property:

    i.    4% of gross proceeds from the sale of each Property, plus all reasonable out of pocket expenses incurred by the Advisor in connection with the services provided; and

    ii.    If the buyer of one of the Properties is properly represented by a real estate broker, then the Debtor shall pay an additional one percent (1%), which fee shall be payable to the buyer's broker.

K.    Enforcement:  If any party shall seek to enforce or protect its rights under this document or under any document or instrument executed and delivered in connection herewith in any action, suit, or other proceeding, including all bankruptcy cases and proceedings, the prevailing party shall be entitled to receive from the other party

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 13 of 16

    payment of its costs and expenses, including reasonable attorneys' fees incurred (whether such costs or fees are incurred before or after the commencement of the proceeding), including any and all appeals or petitions there from.

L.    Severability:  The provisions hereof are severable and the invalidity of any provision hereof will not invalidate any other provision.

M.    Entire Agreement:  This document, combined with the Real Estate Purchase Contract and the Bidder Registration Form, shall constitute the entire agreement between the parties, and any prior understanding or representation of any kind shall not be binding upon either party except to the extent it has been expressly incorporated into this document. Bidder acknowledges that it shall continue to be bound by the terms and conditions of the Seller's Non-Disclosure Agreement.

N.    Captions:  The captions to sections and subsections of this document are solely for the convenience of the parties, are not a part of this document, and shall not be used for the interpretation or determination of the validity of this document or any provision hereof.

O.    Notice: Any correspondence or required notice shall be addressed as follows and shall be sent by Certified Mail, Return Receipt Requested, or by FedEx, either of which notices shall be supplemented by facsimile and/or email transmission, and shall be effective as of the date of actual receipt of the Certified Mail or FedEx. Such notice shall be addressed as follows:

i.    If to a Bidder, to the Bidder and its attorney (if disclosed on the Offer & Bidder Registration Form) using the contact information set forth on the Offer & Bidder Registration Form.

ii.    If to any one or more of Seller, Seller's Counsel, and/or Advisor, then to all of such parties at the addresses set forth in the Definitions section above.

Dated: September 17, 2021.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 14 of 16

**EXHIBIT A**
**OFFER & BIDDER REGISTRATION FORM**

Bidder, _____, hereby:

- Offers to buy the following Properties for the price set forth below, pursuant to this Offer & Bidder Registration Form and the terms and conditions of the accompanying Real Estate Purchase Contract, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the Bidding Procedures approved by the United States District Court for the Middle District of Florida ("**Bidding Procedures**").

Bidder's offer is for the following Properties at the following prices:

| Property Description | PRICE (leave blank if no Bid) |
|---|---|
| **Tampa Property,** <br> 5850 W. Cypress Street, Tampa, Florida, 33607 | $ |
| **Grand Prairie Property,** <br> 801 S State highway 161, Grand Prairie, Texas, 75051 | $ |
| **Smyrna Property,** <br> 3300 Highlands Parkway, Smyrna, Georgia, 30082 | $ |
| All Portfolio (if bidding on all three, no allocation between properties) | $ |

Bidder hereby warrants and represents as follows:

1. Bidder has received, reviewed, understands and agrees to abide by the terms and conditions of the Bidding Procedures, the terms and conditions of which are incorporated herein by reference.

2. Bidder has received, reviewed and understands the terms and conditions of the standard form "**Real Estate Purchase Contract**," the terms and conditions of which are incorporated herein by reference.

3. To the extent that the words and phrases which are capitalized in this Offer & Bidder Registration Form have been defined in the Bidding Procedures or in the Real Estate Purchase Contract, those definitions are incorporated herein by reference.

4. Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 15 of 16

        to the Bidding Procedures.

5.     Each Bid along with any subsequent Bids is irrevocable pursuant to the terms of the Bidding Procedures.

6.     Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the one or more of the Properties on an all-cash, as-is, where-is basis, with no contingencies.

7.     Bidder had an opportunity to inspect and examine the Properties and to review all other pertinent documents with respect to the Properties prior to making its Bid and Bidder relied solely on that review and upon its own investigation and inspection of each Property in making its Bid; and Bidder is not relying upon any written or oral statements, representations, or warranties of the Seller, Seller's Counsel and/or Advisor or any of Seller's other agents or representatives.

8.     The Successful Bidder shall supplement its Deposit so that immediately following the Auction, its aggregate deposit being held by Escrow Agent equals ten percent (10%) of the Successful Bid.  **All supplemental Deposits shall be paid to Escrow Agent by wire.**

9.     Both the Successful Bidder and the Back-up Bidder shall modify and re-execute the Real Estate Purchase Contract, as appropriate, without varying its terms other than to reflect the terms of the Successful Bid as publicly announced at the Auction.

10.    Bidder acknowledges that, pursuant to, inter alia, 18 U.S.C. Section 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

AGREED & ACCEPTED this _____ day of _____, 2021

By:_____

*BIDDER I.D.*
Bidder's Address:_____
Bidder's Contact:_____
Bidder's Phone:_____
Bidder's Email Address: _____
Bidder's Tax ID Number:_____

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
September 17, 2021
Page 16 of 16

*ATTORNEY I.D.*

Bidder's Attorney:_____

Bidder's Attorney's Address:_____

Bidder's Attorney's Phone:_____

Bidder's Attorney's Email Address:_____

*BANK REFERENCE*

Bank & Bank Contact:_____

Bank Address:_____

Bank Contact's Phone Number:_____

Bank Contact's Email Address:_____