ORDERED.

**Dated:  November 02, 2021**

Michael G. Williamson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

| | |
|---|---|
| In re | Chapter 11 |
| PARUSA INVESTMENT CORPORATION | Case No. 8:21-bk-03854-MGW |
| | *Jointly Administered* |
| FICO FINANCIAL CORPORATION | Case No. 8:21-bk-03853-MGW |
| Debtors. | |

_____/

**AMENDED[1]**
**ORDER APPROVING BID PROCEDURES IN CONNECTION**
**WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'**
**ASSETS, GRANTING RELATED RELIEF AND ESTABLISHING DEADLINES**
(Doc. No. 65)

---

[1] Amended to include the inadvertent omission of the last 6 pages of Exhibit A.  This Amended Order also includes Exhibit B to the Bid Procedures constituting a draft Real Estate Purchase Contract, which was not included in the original Order because it had not yet been completed.  The same draft Real Estate Purchase Contract for the Tampa Property also is located at Doc. No. 98.

THIS MATTER on for hearing on October 13, 2021 at 10:30 a.m. on Parusa Investment Corporation and FICO Financial Corporation's (collectively the "**Debtors**") Motion for Entry of an Order (I) Approving Bid Procedures (II) Approving a Break-up Fee and Minimum Overbid Amount; (III) Scheduling a Sale Hearing; and (IV) Granting Certain Related Relief (Doc. No. 65) (the "**Motion**").   The Court, after review of the Motion, review of the record, for the reasons stated on the record in open court, and being otherwise duly advised in the premises, finds good cause to grant the Motion.  Accordingly, it is,

**ORDERED THAT**:

1.      The Motion (Doc. No. 65) is **GRANTED** as set forth below.

2.      The Debtors are permitted to proceed with the sale process for the Properties as provided in this Order and the Bid Procedures, attached hereto as **Exhibit A,** which is incorporated herein by reference in its entirety and shall govern all bids and bid proceedings relating to the Properties.

3.      The Debtors and their representatives are authorized to take any and all actions necessary or appropriate to implement such Bid Procedures and continued marketing of the Properties.

**4.**      The Debtors anticipate assuming all leases and assigning such leases to the Successful Bidder through a Real Estate Purchase Contract.[2] **The deadline for any current tenant of the Debtors (under a real property or telecommunications lease) to object to the assumption and assignment of its lease or to assert a Cure Amount (as defined below) is November 12, 2021.**

---

[2] A draft Real Estate Purchase Contract for the Tampa Property is attached as **Exhibit B** to the Bid Procedures. The Debtors anticipate filing and placing in the Keen Summit data room similar, jurisdictionally appropriate Real Estate Purchase Contract drafts for the Smyrna, GA and Grand Prairie, TX Properties in the near future.

5.      A "**Cure Amount**" is the amount that any tenant believes is necessary to assume its lease pursuant to § 365 of the Bankruptcy Code. Any such objection related to the assumption and assignment of a lease or to a Cure Amount must state with specificity what Cure Amount the tenant believes is required with appropriate documentation in support thereof. If no objection is timely received, the Debtors shall be entitled to assume and assign all leases without further notice, and all tenants shall be forever barred, estopped and enjoined from asserting or claiming that any additional amounts are due or a defaults exist, or that there is any objection or defense to the assumption and assignment of such lease, including any argument that there exist conditions to assumption and assignment that must be satisfied under such lease or that any required consent to assignment has not been given.

6.      The Debtors or any Bidder wishing to reject a lease in connection with the purchase of any Property may only do so after filing a supplemental notice with the Court and after any affected party has been provided an opportunity to be heard and object to such rejection.

7.      The deadline for submitting a Qualified Bid shall be **November 30, 2021, at 4:00 p.m. EST.,** or as subsequently noticed. All Bidders are deemed to have submitted to the exclusive jurisdiction of this Court for the determination of all matters related to the sale of the Properties.

8.      The Court may approve, upon request by the Debtors, a Stalking Horse buyer related to any or all of the Properties, which request may be brought on expedited notice.  The Court may approve a breakup fee of up to 2% of the Stalking Horse Purchase Price in connection with any future Stalking Horse approved by the Court.

9.      An Auction of the Properties is scheduled for **December 2, 2021, at 10:00 a.m. EST,** or as subsequently noticed.

10. The Auction will take place at Underwood Murray, P.A., 100 N Tampa St. Suite 2325, Tampa, FL 33602, or as subsequently noticed. The Seller reserves the right to conduct the Auction using Zoom or a similar electronic platform.

11. A final hearing to consider approval of the Sale of the Property is hereby set for **December 6, 2021, at 9:30 a.m. EST,** or as otherwise subsequently noticed.

12. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

### DATES AND DEADLINES

| | |
|---|---|
| November 12, 2021 | Deadline for Tenant to object to assumption and assignment of its lease or to assert a Cure Amount |
| November 30, 2021, at 4:00 p.m. EST | Deadline to submit a Qualified Bid |
| December 1, 2021, by 9:00 a.m. EST | Advisor will notify each Bidder at the email address set forth on the Offer & Bidder Registration Form if it is a Qualified Bidder |
| December 2, 2021, at 10:00 a.m. EST | Auction of the Properties at Underwood Murray, P.A., 100 N Tampa St. Suite 2325, Tampa, FL 33602, or virtually |
| December 3, 2021 | Deadline to object to the sale of the Properties |
| December 6, 2021, at 9:30 a.m. EST | A final hearing to consider approval of the Sale of the Property |

###

[Megan W. Murray is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF and file a proof of service within three days of entry of this order.]

# EXHIBIT A

# BIDDING PROCEDURES

## I.    DEFINITIONS

A.    ADVISOR: Keen-Summit Capital Partners LLC.  Information about the Properties and about the Auction are available from Advisor.  Advisor can be contacted at:

> Keen-Summit Capital Partners LLC
> ATTN: Harold Bordwin
> Telephone: 914-980-8555
> Email: hbordwin@keen-summit.com

> With a copy to:

> Keen-Summit Capital Partners LLC
> 1 Huntington Quadrangle, Suite 2C04
> Melville, NY 11747
> ATTN: Matt Bordwin and Chris Mahoney
> Telephone: (646) 381-9202 and (646) 381-9205, respectively
> Email: mbordwin@keen-summit.com and
> cmahoney@keen-summit.com, respectively

B.    AUCTION DATE: December 2, 2021, at 10:00 am EST, or as subsequently noticed.

C.    AUCTION VENUE: Underwood Murray, P.A., 100 N Tampa St. Suite 2325, Tampa, FL 33602, or as subsequently noticed.   The Seller reserves the right to conduct the Auction using Zoom or a similar electronic platform.

D.    BACK-UP BID: The Qualified Bid selected by Seller at the conclusion of the Auction as the second-best Bid.

E.    BACK-UP BIDDER: The Bidder who submitted the Back-up Bid.  The Back-Up Bidder's Deposit is held pursuant to the provisions below and, in the event that the Successful Bidder fails to close, the Back-up Bidder is obligated to close.

F.    BID: A binding offer to purchase one of the Properties.  All Bids are irrevocable pursuant to the terms set forth below.

G.    BIDDER: A person or entity that submits a Bid.

H.    BID DEADLINE: November 30, 2021, at 4:00 p.m. EST., or as subsequently noticed.

I.    CLOSING: Closing shall be the date upon which the parties to a Real Estate Purchase Contract exchange documents completing the sale transaction contemplated therein, following the moment upon which all conditions and obligations complete such transaction have been satisfied, other than those conditions that by their nature

are satisfied at the Closing itself, which Closing shall occur within three business (3) days of the entry of an order approving the Successful Bidder and Back-up Bidder, unless otherwise required by the Title Insurer, then in no event later than three (3) business days following the entry of a Final Order.

J.     COURT: United States Bankruptcy Court for the Middle District of Florida (Tampa Division).

K.     DATA: Information provided by Seller to Bidders or prospective Bidders subject to the conditions and limitations set forth in these Bidding Procedures. This information may include title work, surveys, and other data about one of the Properties.

L.     DEPOSIT: The greater of 5% of a Bid or $250,000, per Property. All deposits shall be held and disbursed consistent and pursuant to Court Order and the Bid Procedures.

M.     ESCROW AGENT: The law firm of Buchanan Ingersoll & Rooney, P.C. ("**Buchanan**" or "**BIPC**"), located at 401 E Jackson St. Suite 2400, Tampa, Florida, 33602, c/o ted.tamargo@bipc.com; 813-769-7925, or such other designated person in a Real Estate Purchase Contract.

N.     FINAL ORDER: A court order, the implementation, operation or effect of which has not been stayed and as to which order (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing or writ of certiorari has expired and as to which no appeal or petition for review or rehearing or certiorari has been taken and is pending.

O.     IRREVOCABILITY PERIOD: That period of time which commences upon each Bidder's submission of a Bid and which concludes at the earlier of (i) the Closing, or (ii) 30 days after the conclusion of the Auction (as adjourned), but in no event later than January 17, 2022.

P.     OFFER & BIDDER REGISTRATION FORM: The form of document attached hereto as **Exhibit A**.

Q.     PROPERTIES: The Properties as further defined in the Real Estate Purchase Contract are:

    a)     The "**Grand Prairie Property**," located at 801 State Highway 161, Grand Prairie, TX 75051;

    b)     The "**Tampa Property**," located at 5850 W. Cypress Street, Tampa, Florida 33607; and

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 3 of 17

c) The "**Smyrna Property**," located at 3300 Highlands Parkway, Smyrna, Georgia 30082.

Reference to "**Property**" shall mean each Property individually, and referred to collectively in more than one, shall mean "**Properties**" collectively when a Bidder seeks to bid on more than one Property. The Sale of any Property or Properties shall include assumption and assignment of all real property and telecommunication leases related to the Property, unless otherwise ordered by the Court after notice of a request to reject and subsequent hearing with an opportunity to be heard.

R.      PURCHASE PRICE: The price the Successful Bidder, or Back-Up Bidder, agrees to pay in the Real Estate Purchase Contract, including any increases via Bids at the Auction.

S.      QUALIFIED BID: A Bid that satisfies the requirements set forth below. Bids shall be qualified on a Property-by-Property basis unless otherwise indicated.

T.      QUALIFIED BIDDER: A Bidder who submits a Qualified Bid or submits a contract otherwise acceptable to the Seller.

U.      REAL ESTATE PURCHASE CONTRACT:   The form of agreement, attached hereto in draft form as **Exhibit B**, subject to acceptable redline changes.[1] The Debtors will file a Notice of Filing the draft form of the Real Estate Purchase Contract on the Court's docket and provide a draft in Keen Summit's data room. The final Real Estate Purchase Contract must be approved by the Court at the sale hearing on December 6, 2021.

V.      REQUIRED BID DOCUMENTS: The Required Bid Documents are those documents that a Bidder is required to submit by the Bid Deadline, as further described below.

W.      SALE HEARING: A hearing in the Court on December 6, 2021, at 9:30 a.m. (or as subsequently noticed) at which the Seller will seek an order approving the sale of one or more of the Properties.

X.      SALE ORDER: An order of the Court authorizing a sale of one or more of the Properties to the Successful Bidder.

Y.      SELLER: Parusa Investment Corporation or FICO Financial Corporation, depending

---

[1] Exhibit B is the draft Real Estate Purchase Contract for the Tampa Property, also located at Doc. No. 98. The Debtors anticipate filing and placing in the Keen Summit data room similar, jurisdictionally appropriate Real Estate Purchase Contract drafts for the Smyrna, GA and Grand Prairie, TX Properties in the near future.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 4 of 17

on the Property.

Z.    SELLER'S COUNSEL:

1.    Scott A. Underwood ("**Underwood**"), of Underwood Murray, P.A., 100 N Tampa, St., Suite 2325, Tampa, FL 33602, 813-540-8402; sunderwood@underwoodmurray.com;

2.    Ted Tamargo ("**Tamargo**") of Buchanan Ingersoll & Rooney, P.C., 401 E Jackson St., Suite 2400, Tampa, FL 33602; 813-769-7925; ted.tamargo@bipc.com;.

AA.    STALKING HORSE or STALKING HORSE BIDDER: Means, to the extent applicable, the buyer of one of the Properties who shall be a Qualified Bidder and selected by the Seller as the purchaser of one of the Properties, after notice and Court approval, subject to higher and better bids.  The Stalking Horse shall have the right to appear in Court as the Stalking Horse Bidder and shall have standing to expedite the sale of one of the Properties, subject to Court approval.

BB.    SUCCESSFUL BID: At the conclusion of the Auction, the Qualified Bid selected by the Seller as the winning bid for one of the Properties based upon price, financial condition, experience, and such other factors as the Seller may deem relevant, as further detailed below.

CC.    SUCCESSFUL BIDDER: The Bidder who submitted the Successful Bid.

II.    **STEP ONE - Bid Deadline: November 30, 2021 (or as subsequently noticed)**

A.    The Seller seeks to solicit bids ("**Bids**") for the sale of the Grand Prairie Property, the Tampa Property and the Smyrna Property, individually or collectively, as set forth above.  To solicit the highest and best offers, the Seller is conducting the Auction herein described.  The first step is the submission of binding Bids in the form of the "**Required Bid Documents**" on or before the Bid Deadline.  Seller will review the Required Bid Documents, and based upon that review, Seller will identify those Bidders who have submitted "**Qualified Bids**."  Only those Bidders who have submitted Qualified Bids, if any, will be authorized to participate in the Auction.

B.    For each Property you wish to bid on, you must submit the Required Bid Documents (including the Deposit) so as to be actually received by no later than 4:00 P.M., EST, on November 30, 2021 (the "**Bid Deadline**").

i.    The original set of the Required Bid Documents must be submitted to the Seller's Counsel.    [NOTE: Seller's Counsel also includes Ted Tamargo at Buchanan.]

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 5 of 17

      ii.   The Deposit must be submitted to the Escrow Agent.

      iii.   A complete copy of the Required Bid Documents must also be submitted to Advisor.

C.    Due diligence information can be obtained by contacting Advisor.  Seller and Advisor shall not be obligated to furnish any Data after the Bid Deadline or to any party that the Seller determines, in its sole discretion, is not reasonably likely to be a Qualified Bidder.

## III.    REQUIRED BID DOCUMENTS

A.    The following documents which, taken together, constitute the "**Required Bid Documents**:"

      i.   Offer: A written "**Offer and Bidder Registration Form**" in the form attached hereto as **Exhibit A**.  Pursuant to the terms of such form, the offer must expressly state that the Bidder's offer is all cash, on an as-is, where-is basis and irrevocable during the Irrevocability Period.

      ii.   Contract: An executed and fully completed Real Estate Purchase Contract, in redline format highlighting any discrepancies from the form (see FN 1).  The contract, as tendered, may not contain any contingencies, including, but not limited to due diligence and financing contingencies.

      iii.   Financials:  Written evidence of a commitment for financing or other evidence of ability to consummate the transaction.

      iv.   Other Information:  Any other information that the Seller may reasonably request which would enable Seller to evaluate, among other things, the Bidder's ability to consummate a transaction, the Bidder's legal authority to Bid, and/or the Bidder's ability to fulfill its obligations in connection therewith.

      v.   Deposit: A wire for the Deposit in the amount of the greater of 5% of a Bid or $250,000, per Property.  All deposits shall be held and disbursed consistent and pursuant to Court Order and the Bid Procedures.

B.    Confidentiality: By submitting a Bid, each Bidder agrees to maintain as confidential and to not disclose to third parties both the fact that Bidder submitted a Bid and the terms and conditions of such Bid. Bidder shall continue to be bound by the terms and conditions of the Seller's Non-Disclosure Agreement.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 6 of 17

## IV.   QUALIFIED BIDS

Unless such requirement is waived by the Seller:

A.   ONLY BIDDERS THAT HAVE SUBMITTED QUALIFIED BIDS SHALL BE ELIGIBLE TO PARTICIPATE IN THE AUCTION; and

B.   In order for a Bid to be a "**Qualified Bid**," a Bid shall:

   i.   Include the Deposit and each of the Required Bid Documents, executed and in form and substance acceptable to the Seller;

   ii.   Be a good faith, bona fide offer to purchase one of the Properties;

   iii.   Not be contingent;

   iv.   Be actually received by the Bid Deadline;

   v.   Demonstrate to the Seller the Bidder's ability to consummate promptly the purchase of one of the Properties;

   vi.   Be irrevocable during the Irrevocability Period; and

   vii.   Be one of the three highest Bids or be within twenty percent (20%) of the highest Bid.

C.   Failure of a Bidder to fully, accurately, and promptly respond to Seller's requests for additional information may result in a Bid no longer being considered a Qualified Bid.

D.   Following the receipt of Bids, Seller will ascertain, in the exercise of its reasonable business judgment, whether a Bid is a Qualified Bid, taking into account, among other things, the quality of the Required Bid Documents, the Bidder's experience, financial capacity to close, reputation in the marketplace, etc.

E.   **By 5:00 p.m. EST on December 1, 2021**, Advisor will notify each Bidder at the email address set forth on the Offer & Bidder Registration Form if it is a Qualified Bidder.

## V.   DEPOSIT REQUIREMENT

A.   Each Bidder shall tender a Deposit with the Required Bid Documents to Escrow Agent.  The Successful Bidder will be required to tender additional Deposits, as set forth below.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 7 of 17

B.      The Deposit shall be by <u>wire</u> payable to Escrow Agent pursuant to wire instructions to be provided. Escrow Agent shall have no liability to any party in connection with its services with respect to Deposits except for willful misconduct, gross negligence or bad faith.

C.      In the event that the Seller does not consummate a sale of one of the Properties, for any reason (other than the Bidder's breach or Bidder's failure to consummate a sale), the Seller's sole obligation and liability shall be to refund the Deposit to the Bidder.

D.      No Bid shall be deemed to be "accepted" by Seller unless and until the Court has entered the Sale Order.

## VI.     <u>SELLER'S PRE-AUCTION DISCRETION</u>

A.      Seller reserves the right to negotiate any offer made to purchase one of the Properties, and to determine whether it is beneficial to the estates and the creditors to enter into a stalking-horse agreement for one of the Properties prior to the Auction or to withdraw one of the Properties from the Auction. The Seller retains the complete discretion in revising these Bid Procedures in accordance with its directive to maximize the value of the sale of the Properties. Seller reserves the right to cancel the sale and Auction if it determines, in its sole and absolute discretion, that a sale will not maximize value to the estates.

B.      <u>Stalking Horse</u>. Subject to prior Court approval, and to the extent applicable herein, Seller may enter into Real Estate Purchase Contract for the sale of a one or more of the Properties, with a potential Bidder (the "**Stalking Horse Bidder**") prior to the Auction. The following procedures and protections shall apply with respect to a Stalking Horse Bidder who is approved by the Court:

     i.      Selection of Stalking Horse Bidder. The Seller shall have authority to select a Stalking Horse Bidder. A Bidder shall be eligible to be designated a Stalking Horse Bidder so long as (i) it enters into a Real Estate Purchase Contract by the Bid Deadline, (ii) it tenders a Qualified Bid, and (iii) the Qualified Bid is in an amount acceptable to Seller. In the event that Seller selects a Stalking Horse Bidder, the Stalking Horse Bidder shall be deemed to be a Qualified Bidder and to have submitted a Qualified Bid at a fixed amount (the "**Stalking Horse Purchase Price**").

     ii.      Bid Protections. If Seller consummates a transaction in a greater amount (consistent with these Bid Procedures) as a product of the Auction (other than a transaction with the Stalking Horse Bidder), then the Court <u>may</u> award a break-up free of up to 2% of the Stalking Horse Purchase Price (the "**Break-Up Fee**") to compensate the Stalking Horse Bidder for the effort, burden and

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 8 of 17

<div style="margin-left:2em">

outlay of resources in becoming the Stalking Horse Bidder and negotiating the Stalking Horse Purchase Price. Any Break-Up Free will be subject to prior notice and Court approval.

iii.    Competitive Bid.  In the event of a competitive Auction, including a Stalking Horse, the first competitive bid shall exceed the Stalking Horse Bidder's Qualified Bid by no less than the amount of the Break-Up Fee plus $100,000.

</div>

**VIII.  STEP TWO - The Auction: December 2, 2021 at 10:00 am EST**

A.    Provided that one or more of the Properties is not already sold or otherwise disposed of, then Seller shall Auction such Properties on the Auction Date at the Auction Venue.  The Seller reserves the right to change the location and time of the Auction. Only the Bids of Qualified Bidders will be considered at the Auction and Seller shall have no obligation to admit to the Auction any party who it does not deem a Qualified Bidder.

B.    Based upon the terms of the Qualified Bids, the level of interest expressed in the Properties, and such other information as the Seller may determine to be relevant, Seller shall have the right to amend the procedures set forth herein and to adopt, at any time, in its sole and absolute discretion, such rules for the bidding process which it determines will better promote the goals of the bidding process.  Among other things, Seller shall determine, in the exercise of its sole and absolute discretion, acceptable bidding increments, which may be modified by the Seller during the Auction. Seller may offer the Properties for bidding in successive rounds; may conduct a silent Auction; may conduct an open Auction; or may otherwise conduct the Auction in the manner that it deems most appropriate for soliciting the highest and best Bids.

C.    The Seller shall receive Bids at the Auction for the Properties with the intention of selling the Properties to the Successful Bidder.  At the conclusion of the Auction or a later point to be determined by the Seller, the Seller will determine which Bid is the highest and best Bid and which Bid is the next highest and best Bid and, based upon that determination, will announce the Successful Bid and the Back-up Bid, respectively.

D.    Seller's determination of what constitutes the first and second "highest and best" Bids will be based upon the exercise of Seller's discretion and may take into consideration price, modifications to the Real Estate Purchase Contract, closing risk, risk of delay, financial condition, experience, and such other factors as Seller may deem relevant.

E.    At the conclusion of the Auction, both the Successful Bidder and the Back-up Bidder

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 9 of 17

shall update and re-execute their respective Real Estate Purchase Contracts and any other agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid and the Back-up Bid were made.

F.     Formal rejection of a Bid by the Seller will not occur unless and until (i) the Seller expressly rejects a Bid in writing; or (ii) the Irrevocability Period lapses.

G.     The Successful Bidder shall supplement its Deposit so that immediately following the Auction, its aggregate deposit being held by Seller equals ten percent (10%) of the Successful Bid.  All supplemental Deposits shall be paid by wire to Escrow Agent.  All disputes regarding Deposits shall be decided by the Bankruptcy Court.

H.     The establishment of a Successful Bid and a Back-up Bid does not release any Bidder from its obligations and all Bids remain open and irrevocable for the duration of the Irrevocability Period.

## IX.     STEP THREE – Court Approval: Sale Hearing Date, Approximately December 6, 2021 (Subject to change)

A.     Any objection to the sale must be filed with the Court on or before **December 3, 2021.**

B.     The Sale Hearing will be held in the Court, at which time the Court will approve the Successful Bidder and Back Up Bidder.

C.     Timely filed objections to the proposed sale may be heard by the Court at that time.

D.     Application and Return of Deposits:

   i.     Seller reserves the right to cause the Escrow Agent to hold the Deposit of the Backup Bidder until expiration of the Irrevocability Period.

   ii.     Seller shall return the Deposits of all Bidders other than the Successful Bidder and the Backup Bidder within five (5) business days of the Bankruptcy Court's Final Order approving the Successful Bidder and Backup Bidder.

   iii.     If the Successful Bidder closes, Seller shall apply the Successful Bidder's Deposit to the Successful Bidder's Purchase Price at Closing and Escrow Agent shall return the Backup Bidder's deposit within five (5) business days of that Closing.

   iv.     If the Successful Bidder fails to close and the Backup Bidder closes, Seller

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 10 of 17

shall apply the Backup Bidder's Deposit to the Backup Bidder's Purchase Price at Closing.

## X.   STEP FOUR - The Closing

A.   The Closing(s) shall occur in accordance with the terms of the Real Estate Purchase Contract and the Sale Order.  WITH RESPECT TO THE CLOSING, TIME OF PERFORMANCE BY THE SUCCESSFUL BIDDER IS OF THE ESSENCE.

B.   In the event of the failure by the Successful Bidder to consummate a sale of one of the Properties, the Back-up Bidder for such Property shall be deemed the Successful Bidder without further Order of the Court and shall proceed to Closing no later than two (2) weeks after the time set for closing by the Successful Bidder in section I(I)(Closing), following Seller's tender of a notice to the Back-up Bidder at the address set forth on the Bidder Registration Form.

C.   The Seller shall be entitled to retain the Deposit (as supplemented) of any Successful Bidder who fails to close because of a breach or failure by such Successful Bidder, and such Deposit shall be deemed forfeited by such defaulting Successful Bidder and shall be disbursed to the Seller, shall not be credited against the Purchase Price for the benefit of a Back-up Bidder, and Seller specifically reserves the right to seek all available damages from the defaulting Bidder.

D.   The balance of the Purchase Price shall be paid by the Successful Bidder by wire transfer.

E.   The provisions in this Section X shall apply to any Backup Bidder who becomes a Successful Bidder.

## XI.   OTHER PROVISIONS

Disclaimer

A.   Any sale or other disposition of all or a portion of the Properties shall be without representations or warranties of any kind, nature or description by the Seller, its agents or representatives.  The Properties shall be transferred on an "as is" and "where is" basis.

   i.   Any and all Data provided to prospective Bidders:

      a)   has been prepared for informational purposes only;

      b)   has been prepared from materials supplied to the Seller by third parties; and

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 11 of 17

      c)      is being furnished solely for use by Bidders in considering their interest in acquiring the Properties;

B.      By accepting Data from the Seller, the Seller's Counsel, through the bankruptcy case post-petition, and/or through the Advisor, the recipient acknowledges and agrees that the Data has been prepared to assist the recipient in making its own evaluation of the Properties and the Data does not purport to be all-inclusive or to contain all of the information that a Bidder may desire. In all cases, Bidders should conduct their own investigation and analysis of the Properties, conduct site inspections, and scrutinize all of the Data. Advisor has assumed no responsibility for independent verification of any of the Data and has not in fact in any way audited such information. Seller, Seller's Counsel and Advisor are not making nor will they make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise, with respect to the Properties and with respect to the accuracy, reliability or completeness of any Data, except as expressly stated in a contract executed by Seller. Seller, Seller's Counsel and Advisor and their respective partners, officers, directors and employees, affiliates and representatives, expressly disclaim any and all liability based on or relating or pertaining to any written or oral statements, financial information, projections, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise.

C.      Each Bidder, by submitting a Bid for one of the Properties, shall be deemed to acknowledge and represent:

      i.      that it is bound by these Bidding Procedures;

      ii.      that it had an opportunity to inspect and examine the Properties and to review all pertinent documents and information with respect to the Properties prior to making its offer and that it relied solely on that review and upon its own investigation and inspection of the Properties in making its Bid; and

      iii.      that it is not relying upon any written or oral statements, representations, or warranties of the Seller, or the Seller's agents or representatives.

      v.      All of the Seller's right, title and interest in and to one of the Properties shall be assigned and sold, free and clear of all liens, claims, encumbrances and security interests, which shall attach to the net proceeds received by the Seller as a result of the sale with the same force and effect that they now have, subject to further Order of the Court.

D.      The sale of the Properties shall not include personal property, inventory, fixtures, trade fixtures, or other furnishings or equipment located in or on the Properties

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 12 of 17

except as set forth in the Real Estate Purchase Contract.

E.      Sale of the Properties shall include the assumption of all real property and telecommunication leases ("**Leases**") unless the Bidder or Seller seeks to reject a Lease, which rejection only may be done by filing a motion and thereafter obtaining a court order after requisite notice to all affected parties. Any party objecting to the assumption and assignment of its Lease or contract, or asserting a Cure Amount, must file a objection by November 12, 2021.

F.      Except to the extent of the applicability of section 1146(c) of the Bankruptcy Code, all sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale of the Properties shall be the sole responsibility of the Successful Bidder and shall be paid to the Seller at the Closing.

G.      The Seller, at or before the Auction, may impose such other and additional terms and conditions as it may determine to be in the best interests of its estate, the creditors and other parties' interest.

H.      The Seller may reject any Bid that in its sole discretion Seller deems to be: (i) inadequate or insufficient; or (ii) contrary to the best interest of the Seller's estate and creditors. Such rejection may be made at any time prior to Court Approval.

I.       Any and all disputes related or pertaining to or resulting or arising from the marketing process, the Auction, the sale of the Properties, and/or the conduct of the Seller, Advisor and/or any of Seller's other professional advisors shall be adjudicated solely by the Court. The submission of a Bid shall constitute an express consent by the Bidder to the exclusive jurisdiction of the Court for all such matters.

J.       Bidder warrants and represents that it is a principal acting on its own behalf, and not as a broker, finder or agent acting on another's behalf. Bidder acknowledges that it will not look to the Seller, Seller's Counsel and/or Advisor and their respective representatives for the payment of any fee or commission. Seller is compensating Advisor pursuant to a separate Bankruptcy Court approved agreement. In addition, Bidder agrees to be responsible for the payment of any fee, commission or other compensation payable to any broker, finder or agent who alleges it has dealt with or through Bidder. Bidder hereby agrees to indemnify, defend and hold the Seller, Seller's Counsel and Advisor and their respective representatives harmless from and against any and all claims, damages, losses and liabilities, costs and expenses (including reasonable attorneys' fees and disbursements) arising out of any claim or claims by any broker, finder or similar agent for commissions, fees or other compensation who allege that they have dealt with the Seller, Seller's Counsel and/or Advisor in connection with the Properties. Bidder understands that the Seller, Seller's Counsel and Advisor and their respective representatives have not agreed to

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 13 of 17

pay any brokerage commissions, finder's fee or other compensation in connection with Bidder's possible purchase other than as set forth below in Section XI(J). If Bidder is working with a broker or finder other than Advisor (as defined above), Bidder agrees that Bidder shall be responsible for the payment of any fees, if any, to such broker or finder, other than as set forth below.

K.   With respect to the foregoing paragraph, Bidder acknowledges that Advisor shall receive from Seller as compensation for the sale of each Property:

    i.   4% of gross proceeds from the sale of each Property, plus all reasonable out of pocket expenses incurred by the Advisor in connection with the services provided; and

    ii.   If the buyer of one of the Properties is properly represented by a real estate broker, then the Debtor shall pay an additional one percent (1%), which fee shall be payable to the buyer's broker.

L.   <u>Enforcement</u>:  If any party shall seek to enforce or protect its rights under this document or under any document or instrument executed and delivered in connection herewith in any action, suit, or other proceeding, including all bankruptcy cases and proceedings, the prevailing party shall be entitled to receive from the other party payment of its costs and expenses, including reasonable attorneys' fees incurred (whether such costs or fees are incurred before or after the commencement of the proceeding), including any and all appeals or petitions there from.

M.   Severability:  The provisions hereof are severable and the invalidity of any provision hereof will not invalidate any other provision.

N.   Entire Agreement:  This document, combined with the Real Estate Purchase Contract and the Bidder Registration Form, both of which shall be incorporated herein by reference in their entirety with all exhibits, and as amended by each Bidder, shall constitute the entire agreement between the parties, and any prior understanding or representation of any kind shall not be binding upon either party except to the extent it has been expressly incorporated into this document. Bidder acknowledges that it shall continue to be bound by the terms and conditions of the Seller's Non-Disclosure Agreement.

O.   Captions:  The captions to sections and subsections of this document are solely for the convenience of the parties, are not a part of this document, and shall not be used for the interpretation or determination of the validity of this document or any provision hereof.

P.   Notice: Any correspondence or required notice shall be addressed as follows and shall be sent by Certified Mail, Return Receipt Requested, or by FedEx, either of

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 14 of 17

which notices shall be supplemented by facsimile and/or email transmission, and shall be effective as of the date of actual receipt of the Certified Mail or FedEx. Such notice shall be addressed as follows:

i.      If to a Bidder, to the Bidder and its attorney (if disclosed on the Offer & Bidder Registration Form) using the contact information set forth on the Offer & Bidder Registration Form.

ii.     If to any one or more of Seller, Seller's Counsel, and/or Advisor, then to all of such parties at the addresses set forth in the Definitions section above.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 15 of 17

## EXHIBIT A
## OFFER & BIDDER REGISTRATION FORM

Bidder, _____ , hereby:

- Offers to buy the following Properties for the price set forth below, pursuant to this Offer & Bidder Registration Form and the terms and conditions of the accompanying Real Estate Purchase Contract, and

- Seeks to become a Qualified Bidder pursuant to the terms and conditions of the Bidding Procedures approved by the United States District Court for the Middle District of Florida ("**Bidding Procedures**").

Bidder's offer is for the following Properties at the following prices:

| Property Description | PRICE (leave blank if no Bid) |
|---|---|
| **Tampa Property,** 5850 W. Cypress Street, Tampa, Florida, 33607 | $ |
| **Grand Prairie Property,** 801 S State highway 161, Grand Prairie, Texas, 75051 | $ |
| **Smyrna Property,** 3300 Highlands Parkway, Smyrna, Georgia, 30082 | $ |
| All Portfolio (if bidding on all three, no allocation between properties) | $ |

Bidder hereby warrants and represents as follows:

1. Bidder has received, reviewed, understands and agrees to abide by the terms and conditions of the Bidding Procedures, the terms and conditions of which are incorporated herein by reference.

2. Bidder has received, reviewed and understands the terms and conditions of the standard form "**Real Estate Purchase Contract**," the terms and conditions of which are incorporated herein by reference.

3. To the extent that the words and phrases which are capitalized in this Offer & Bidder Registration Form have been defined in the Bidding Procedures or in the Real Estate Purchase Contract, those definitions are incorporated herein by reference.

4. Each Bid made at the Auction shall constitute a binding, irrevocable "Bid" pursuant to the Bidding Procedures.

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 16 of 17

5.      Each Bid along with any subsequent Bids is irrevocable pursuant to the terms of the Bidding Procedures.

6.      Each Bid is and shall be a good faith, bona fide, irrevocable offer to purchase the one or more of the Properties on an all-cash, as-is, where-is basis, with no contingencies.

7.      Bidder had an opportunity to inspect and examine the Properties and to review all other pertinent documents with respect to the Properties prior to making its Bid and Bidder relied solely on that review and upon its own investigation and inspection of each Property in making its Bid; and Bidder is not relying upon any written or oral statements, representations, or warranties of the Seller, Seller's Counsel and/or Advisor or any of Seller's other agents or representatives.

8.      The Successful Bidder shall supplement its Deposit so that immediately following the Auction, its aggregate deposit being held by Escrow Agent equals ten percent (10%) of the Successful Bid.  **All supplemental Deposits shall be paid to Escrow Agent by wire.**

9.      Both the Successful Bidder and the Back-Up Bidder shall modify and re-execute the Real Estate Purchase Contract, as appropriate, without varying its terms other than to reflect the terms of the Successful Bid as publicly announced at the Auction.

10.     Bidder acknowledges that, pursuant to, *inter alia*, 18 U.S.C. Section 371, it is a federal crime to engage in collusive bidding or to chill the bidding.

AGREED & ACCEPTED this _____ day of _____, 2021

By:_____

*BIDDER I.D.*
Bidder's Address:_____
Bidder's Contact:_____
Bidder's Phone:_____
Bidder's Email Address: _____
Bidder's Tax ID Number:_____

*ATTORNEY I.D.*
Bidder's Attorney:_____

Bid Procedures / Parusa Investment Corp. / FICO Financial Corp.
Page 17 of 17

Bidder's Attorney's Address:_____

Bidder's Attorney's Phone:_____

Bidder's Attorney's Email Address:_____

*BANK REFERENCE*

Bank & Bank Contact:_____

Bank Address:_____

Bank Contact's Phone Number:_____

Bank Contact's Email Address:_____

# EXHIBIT B

## to the Bid Procedures

**-**

## *Draft* Real Estate Purchase Contract for the Tampa Property

## REAL ESTATE PURCHASE CONTRACT

THIS REAL ESTATE PURCHASE CONTRACT (this "***Contract***") is made and entered into as of the _____ day of _____, 2021, by and between **FICO FINANCIAL CORP.**, a Florida corporation ("***Seller***"), and _____, a _____ ("***Buyer***").

## ARTICLE I
## PURCHASE AND SALE

1.1     <u>Agreement of Purchase and Sale</u>.  Subject to the terms and conditions set forth herein and for the consideration stated herein, Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller all of the surface of that certain real property located at 5850 W. Cypress Street, Tampa, Florida 33607, under Folio No. 112501-0300 and more particularly described on **<u>Exhibit A</u>** attached hereto and all structures and buildings located thereon (the "***Real Property***"). The term "***Property***" as used herein shall include: (a) the surface of the Real Property, (b) all easements, rights of way, privileges, appurtenances running with the Real Property, if any, including but not limited to, all assignable utility and developmental rights allocated or reserved thereto; (c) the Personal Property (as hereinafter defined); and (d) and Intangible Property (as hereinafter defined).  For purposes of this Contract, "***Personal Property***" means all appliances, trade or moveable fixtures, equipment, machinery, furniture, furnishings, decorations, and other tangible personal property owned by Seller, if any, that remains on the Property at Closing (as hereinafter defined) and used in the operation and maintenance thereof, but excluding any such personal property owned by the Tenants (as hereinafter defined) or occupants of the Property or as listed on **<u>Exhibit B</u>** attached hereto, and all immoveable fixtures.  For purposes of this Contract, "***Intangible Property***" means the Leases (as hereinafter defined) and the following items, to the extent such items exist, which relate to the Property, and are transferrable: (i) certificates of occupancy; (ii) any plans and specifications and other architectural and engineering drawings for the improvements; and (iii) any of the following which Buyer elects to assume: warranties issued to the Seller in connection with the construction of any improvements or otherwise, the Assigned Service Contracts (as hereinafter defined) and other rights related to the Property, including governmental permits, approvals and licenses (including any pending applications).

1.2     <u>Purchase Price</u>. The purchase price for the Property shall be _____ and No/100 Dollars ($_____.00) ("***Purchase Price***").  The Purchase Price shall be payable in U.S. currency as follows:

(a)     <u>Initial Deposit</u>.  Buyer has deposited with Buchanan Ingersoll & Rooney PC, as escrow agent (the "***Escrow Agent***") the sum of _____ and No/100 Dollars ($_____.00) (the "***Initial Deposit***");

(b)     <u>Additional Deposit</u>.  If Buyer is the Successful Bidder, within one (1) Business Day following the Auction, Buyer shall deposit with the Escrow Agent an additional deposit (the "***Additional Deposit***") in an amount equal to the difference between (i) ten percent (10%) of the Purchase Price, minus (ii) the amount of the Initial Deposit.  For the avoidance of doubt, the Initial Deposit and the Additional Deposit (collectively, the "***Deposit***") shall equal ten percent (10%) of the Purchase Price.  The Deposit will be credited towards payment of the Purchase Price at Closing. The Escrow Agent shall hold and disburse the Deposit in accordance

with this Contract (including Escrow Conditions set forth in **Exhibit C** attached hereto), the Bid Procedures Order (as hereinafter defined), and the Bidding Procedures (as hereinafter defined); and

(c)     Balance.  The balance of the Purchase Price, plus or minus net adjustments and/or prorations provided for herein, shall be paid in cash through Escrow (as hereinafter defined) in the form of wired funds or other immediately available federal funds payable to the order of Escrow Agent on or before the Closing Date (as hereinafter defined).

1.5     No Financing Contingency.   This is a "cash" transaction with no financing contingency.  Buyer's obligations hereunder are not in any way conditional upon, or qualified by, Buyer's ability to obtain financing of any type or nature whatsoever to consummate the transaction contemplated hereby.

1.6     Bankruptcy Case.  Buyer acknowledges that Seller is a debtor in a Chapter 11 bankruptcy proceeding pending in the United States Bankruptcy Court Middle District of Florida, Tampa Division (the "***Bankruptcy Court***") in that certain case styled *In re Parusa Investment Corporation and Fico Financial Corporation*, Case No. 8:21-bk-03854-MGW and Case No. 8:21-bk-03853-MGW (jointly administered under 8:21-bk-03854-MGW, the "***Bankruptcy Case***").  The Property is being sold in accordance with Bidding Procedures approved by the Bankruptcy Court (the "***Bidding Procedures***") attached to the Order approving those Bidding Procedures by the Bankruptcy Court on October 26, 2021, at Docket Entry No. 95 in the Bankruptcy Case (the "***Bid Procedures Order***"), the terms of such Bidding Procedures and Bid Procedures Order are hereby incorporated herein by reference.  Buyer agrees to be bound by the Bidding Procedures, the Bid Procedures Order, and all requirements of the United States Bankruptcy Code and the Bankruptcy Court, including, without limitation, satisfying the requirements to be a Qualified Bidder or a Backup Bidder, and acknowledgement of the irrevocability of a Bid during the Irrevocability Period and that any Bid is subject to higher and better Bids at the Auction.  This Contract and the sale of the Property is subject to competitive bidding and higher and better offers at an Auction.  All capitalized terms which are used but not defined in this Contract shall have the meanings ascribed to such terms in the Bidding Procedures.

## ARTICLE II
## TITLE AND SURVEY

2.1     Permitted Exceptions.  The Property shall be conveyed subject to the following matters (collectively the "***Permitted Exceptions***"):

(a)     Real property taxes, assessments and other governmental taxes, fees, charges, or assessments levied or assessed against the Property which are a lien not yet due and payable and subsequent years, which taxes shall be prorated at Closing;

(b)     Rights of tenants listed on the rent roll attached as **Exhibit D** (collectively, the "***Tenants***") under written leases (collectively, the "***Leases***"), all of which Leases shall be assumed by Seller and assigned by Seller to Buyer at Closing;

      (c)     Environmental, building, zoning and other laws, rules, regulations, ordinances or bylaws that may affect the use, maintenance or ownership of the Property;

      (d)     All reservations, restrictions, limitations, declarations, easements, and other matters of public record; and

      (e)     Matters which would be disclosed by an accurate and comprehensive survey of the Real Property.

    2.2    <u>Commitment for Title Insurance</u>.  Seller has provided Buyer with a commitment for an owner's policy of Title Insurance (the "***Title Commitment***") issued by Buchanan Ingersoll & Rooney PC ("***Title Agent***") as agent for First American Title Insurance Company ("***Title Company***") setting forth the state of the title to the Property and all exceptions thereto, including the easements, restrictions, rights-of-way, covenants, reservations, and other conditions, if any, affecting the Property which would appear in an Owner's Policy of Title Insurance (the "***Owner's Policy***"). Prior to Closing, Seller shall order an updated Title Commitment from the Title Company naming the Buyer as the proposed insured and in the full amount of the Purchase Price.  Buyer shall be responsible for all costs imposed by Title Company in connection with the issuance of the Owner's Policy.  Buyer shall also be responsible for the costs of other endorsements as Buyer may require. Additionally, if Buyer defaults under or terminates this Contract, Buyer shall pay for the cost of issuing the Commitment, including without limitation, all costs associated with the title search.

    2.3    <u>Survey</u>.  Buyer, at its cost, may obtain a current ALTA survey of the Real Property or an update to any survey of the Real Property in the Data Room (as hereinafter defined) (the "***Survey***"). This Contract shall not be subject to any survey contingency or conditions.

## ARTICLE III
## INSPECTIONS, AS-IS, AND CONDITION OF PROPERTY

    3.1    <u>Delivery of Materials</u>.  Prior to Buyer executing this Contract, Seller has made available in the data room established with respect to the Property pursuant to the Bidding Instructions (the "***Data Room***") for inspection by Buyer certain non-proprietary information related to the Property, which may include copies of engineering and geotechnical studies; title commitments; title policies; surveys; plans; permits related to the Property; reports and inspections relating to the environmental and physical condition of the Property; the Leases; and service contracts, maintenance agreements, or any other contracts or agreements related to the Property (collectively, the "***Property Information***").  The Property Information has been made available to Buyer without recourse, representation or warranty and shall be subject to the conditions and limitations set forth in the Bidding Procedures.  Any reliance by Buyer on the Property Information shall be at Buyer's risk.

    3.2    <u>Inspections</u>. Buyer understands, covenants and agrees that prior to execution of this Contract, Buyer had an adequate opportunity to inspect the Property and finds the Property to be acceptable and Buyer shall purchase the Property "as is" are further described in Section 3.3 below.

3.3   <u>As-Is</u>.  It is expressly understood, covenanted, and agreed between the parties that the Property shall be purchased "as is," including without limitation, with no warranty, express or implied, from Seller, as to the suitability thereof for any activity or use or particular purpose, fitness, merchantability, design, condition, capacity, performance, or any other aspect of the Property or its material or workmanship; or as to compliance of the Property with any laws, rules, ordinances or regulations of any governmental authority, environmental or otherwise.  Buyer releases, indemnifies, and holds harmless Seller from claims arising from acts or occurrences after the Closing whether based on Seller's negligence in whole or in part and/or claims based upon strict liability and/or product liability with respect to the physical properties or condition of the Property, including the environmental condition of the Property.  Buyer and its successors and assigns have and shall be deemed to have assumed all risk and liability with respect to the presence or remediation of all known and unknown toxic or hazardous substances, materials, or waste or other actual or potential environmental contamination on, within or under the surface of the Property, including both known or unknown apparent, not apparent or latent, and whether existing prior to, at or subsequent to, transfer of the Property to Buyer and Buyer releases the Seller from any and all claims arising from the foregoing environmental conditions.  The foregoing will survive Closing and shall appear on the Deed (as hereinafter defined) and the Bill of Sale (as hereinafter defined).

## ARTICLE IV
## TENANTS

The deadline for any current tenant of the Debtors (under a real property or telecommunications lease) to object to the assumption and assignment of its lease or to assert a Cure Amount (as defined in the Bid Procedures Order) is November 12, 2021.

Seller shall be responsible for all Cure Amounts unless Seller provides explicit notice to Buyer before the deadline to submit a Qualified Bid (November 30, 2021 at 4:00 pm) of specific Cure Amounts that Seller shall not be responsible for.  Seller's obligations shall not include future or existing obligations to fund tenant improvements for which such improvements have not been made to the Property and to the extent of partially completed tenant improvements, Seller shall only be responsible for that portion of any tenant improvement allowance or reimbursement owed as of the Closing Date.  Buyer shall be obligated for all other tenant improvement obligations.

## ARTICLE V
## CLOSING AND ESCROW

5.1   <u>Time and Place</u>.  The closing of the transaction contemplated hereby (the "***Closing***") shall be the date upon which the parties to this Contract exchange documents completing the sale transaction contemplated therein, following the moment upon which all conditions and obligations complete such transaction have been satisfied, other than those conditions that by their nature are satisfied at the Closing itself, which Closing shall occur within three business (3) days of the entry of an order approving the Successful Bidder and Back-up Bidder, unless otherwise required by the Title Company, then in no event later than three (3) business days following the entry of a Final Order (as defined in the Bidding Procedures) (the date on which the transaction contemplated hereby closes is hereinafter called the "***Closing Date***").

The terms Closing Date and Closing are used herein interchangeably as the context permits.   The Closing shall be achieved on the Closing Date by delivery of documents and funds in escrow ("***Escrow***") to the Escrow Agent and it shall not be necessary to have an "in person" Closing.  The Escrow Agent will act as escrow agent.   This Contract shall be considered as the escrow instructions between the parties.  If the Escrow Agent shall require further escrow instructions, Buyer shall request that the Escrow Agent promptly prepare escrow instructions for the purchase and sale of the Property provided that such terms and provisions shall not be inconsistent herewith. The escrow instructions shall provide, in the event of any conflict between the terms and conditions of this Contract and said escrow instructions, then the terms and conditions of this Contract and any related Court order shall control.   WITH RESPECT TO THE CLOSING, TIME OF PERFORMANCE BY THE BUYER IS OF THE ESSENCE.

5.2    <u>Seller's Obligations at Closing</u>.  On or before the Closing, Seller shall deliver to the Escrow Agent the following:

(a)    a duly executed and acknowledged trustee's deed (the "***Deed***"), in the form attached as **<u>Exhibit E</u>**;

(b)    two (2) duly executed counterparts of the Bill of Sale conveying title to the Personal Property (the "***Bill of Sale***"), in the form attached as **<u>Exhibit F</u>**;

(c)    two (2) duly executed counterparts of the Assignment and Assumption of Leases and other Intangible Property in the form attached hereto as **<u>Exhibit G</u>**;

(d)    a duly executed copy of the closing statement prepared by the Title Company (the "***Closing Statement***");

(e)    a FIRPTA Affidavit duly executed by Seller, stating that Seller is not a "foreign person" as defined in the federal Foreign Investment in Real Property Tax Act of 1980 and the 1984 Tax Reform Act and otherwise meeting the requirements of such Acts;  and

(f)    an order of the Bankruptcy Court approving the Seller's assumption of the Assigned Service Contracts and assignment thereof to Buyer, the closing pursuant to this the Contract and authorizing Seller to effectuate the Contract and execute related documents.

5.3    <u>Buyer's Obligations at Closing</u>.  On or before the Closing, Buyer shall deliver to Seller via delivery to the Escrow Agent the following:

(a)    the balance of the Purchase Price by wire transfer of immediately available funds, subject to credits and prorations as set forth in this Contract;

(b)    a duly executed copy of the Closing Statement;

(c)    two (2) duly executed counterparts of the Bill of Sale;

(d)    two (2) duly executed counterparts of the Assignment and Assumption of Lease and other Intangible Property in the form attached hereto as **<u>Exhibit G</u>**;

(e)     a tenant notification letter on the form attached hereto as **Exhibit H**, notifying the Tenants of the transfer of ownership of the Property to Buyer; and

(f)     such evidence as the Title Company may reasonably require as to the authority of the person or persons executing documents on behalf of Buyer.

5.4     Taxes and Prorations. The following shall be prorated as of the Closing Date:

(a)     Real property taxes and assessments, property owners association assessments, and all other taxes and assessments applicable to the Property, if any, shall be prorated as of the date of Closing (on a calendar year basis) with the day of Closing being charged to Buyer. Any apportionment of real property taxes or assessments to be made with respect to a tax year for which either the tax rate or assessed valuation or both have not yet been fixed shall be upon the basis of the tax rate and/or assessed valuation last fixed. Special assessments due and payable prior to the Closing shall be paid by Seller. If special assessments are payable in installments then installments due prior to the year of the Closing Date shall be paid by Seller and installments due after the year of the Closing Date shall be paid by Buyer. Special assessment installments due for the year of the Closing Date shall be prorated between Buyer and Seller. All taxes assessed against the Property for prior years due to a change in use or ownership of the Property and any rollback taxes shall be assumed and paid by Buyer. All prorations of taxes and assessments shall be final.

(b)     All rents (and other amounts due and payable by tenants under the Leases including, but not limited to minimum rent, common area maintenance, tax and insurance reimbursements to be made by the tenants) actually received, shall be prorated as of the Closing Date, based on the actual days in the month of the Closing. If the Closing occurs before rents and all other amounts due and payable by the tenants under the Leases have actually been received for the month in which the Closing occurs, the apportionment of such rents and other amounts shall be upon the basis of such rents and other amounts actually received by Seller. Subsequent to Closing, if any such rents and other amounts are actually received by Buyer or Seller, all such amounts shall first be applied to current rents due and payable for the month in which the same are received, second, to rents due and payable for the month in which the Closing occurs, third, to post-Closing past due rents, fourth, to other past-due rents due and payable for pre-Closing periods, and fourth, the balance shall immediately be paid by Buyer to Seller or Seller to Buyer, as applicable. Buyer shall use diligent, good-faith efforts and in the ordinary course of business (without being required to initiate legal proceedings or evict any tenant) to collect any such rents and other amounts not apportioned at the Closing for the benefit of Seller and shall continue to collect any such rents for the benefit of Seller for a six (6) month period commencing on Closing. The provisions of this Section shall survive Closing.

(c)     Any security deposit under any Lease held by Seller at the time of Closing shall be transferred to Buyer on the Closing Date and Buyer shall assume Seller's obligations related to such security deposits. Said transfer may be treated as a credit on the Closing Statement.

(d)     If any errors or omissions are made at the Closing regarding prorations, the parties shall make the appropriate corrections promptly after the discovery thereof.

5.5     Closing Costs.

     (a)    <u>Seller's Costs</u>.  Seller shall pay the following:

         (i)    The expense of obtaining and recording any title curative matters which Seller has elected to cure; and

         (ii)    any other costs set forth in this Contract to be paid by Seller.

     (b)    <u>Buyer's Costs</u>.  Buyer shall pay the following:

         (i)    transfer taxes on the Deed;

         (ii)    the costs of recording the Deed;

         (iii)    the cost of the Survey;

         (iv)    the costs of any third party reports ordered by Buyer; and

         (v)    any other costs set forth in this Contract to be paid by Buyer.

5.6    <u>Assigned Service Contracts</u>. Attached hereto as **<u>Exhibit I</u>** is a complete list of all existing written or oral maintenance, management, or other service contracts or agreements, as amended, that Seller has identified as affecting Property (the "***Assigned Service Contracts***"). Unless Buyer removes an Assigned Service Contract from **<u>Exhibit I</u>** upon execution of this Contract and also provides separate email Notice to Seller of such removal on or before Closing, Seller will assume the Assigned Service Contracts on **<u>Exhibit I</u>** and assign the Assigned Service Contracts to Buyer at Closing pursuant to the Assignment and Assumption of Lease and other Intangible Property (subject to separate Court motion and approval).  Buyer shall receive a credit for any "Cure Amounts" associated with assumption and assignment of the Assigned Service Contracts.

### ARTICLE VI
### REPRESENTATIONS AND WARRANTIES

6.1    <u>Representations and Warranties of Seller</u>. Seller hereby represents and warrants to Buyer as of the Closing Date that:

     (a)    Seller has the power and authority to enter into this Contract and all other agreements to be executed and delivered by Seller pursuant to the terms and provisions hereof, to perform its obligations hereunder and thereunder, and to consummate the transaction contemplated hereby;

     (b)    This Contract has been duly executed and delivered by Seller and this Contract constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms, as approved by the Bankruptcy Court;

     (c)    Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended and any related regulations; and

(d)    For purposes of a Specially Designated Nationals and Blocked Persons Search, Seller's name is Fico Financial Corp., a Florida corporation.

6.2    <u>Representations and Warranties of Buyer</u>.  Buyer hereby represents and warrants to Seller as of the date the Buyer executes this Contract and as of the Closing Date that:

(a)    Buyer is a _____, duly organized and in good standing under the laws of _____.  Buyer has complete power and authority to enter into this Contract and all other agreements to be executed and delivered by Buyer pursuant to the terms and provisions hereof, to perform its obligations hereunder and thereunder, and to consummate the transaction contemplated hereby;

(b)    This Contract has been duly executed and delivered by Buyer and this Contract constitutes the legal, valid and binding obligation of Buyer enforceable in accordance with its terms;

(c)    The execution, delivery and performance of this Contract and any other agreement contemplated hereby and the consummation of the transaction contemplated hereby or thereby do not, with or without the passage of time and/or the giving of notice, (i) conflict with, constitute a breach, violation or termination of any provision of any contract or other agreement to which Buyer is a party, (ii) conflict with or violate the organizational documents of Buyer, or (iii) violate any law, statute, ordinance, regulation, judgment, writ, injunction, rule, decree, order or any other restriction of any kind or character applicable to Buyer; and

(d)    For purposes of a Specially Designated Nationals and Blocked Persons Search, Buyer's name is, _____.

The foregoing representations and warranties shall survive Closing for a period of one hundred eighty (180) days.

<div align="center">

**ARTICLE VII**
**DEFAULT**

</div>

7.1    <u>Default by Buyer</u>:  If Buyer fails to fully and timely perform any of its obligations hereunder or fails to close on the purchase of the Property in accordance with this Contract for any reason, except Seller's default or the termination of this Contract by Buyer as expressly permitted herein, Seller shall be entitled to retain the Deposit, and such Deposit shall be deemed forfeited by Buyer, shall not be credited against the purchase price for the benefit of a Back-up Bidder, and Seller specifically reserves the right to seek all available damages from Buyer.  It is acknowledged by Buyer that the actual damages which will be sustained by Seller in such event are not easily quantifiable at this time, and that retention by Seller of the Deposit under such circumstances is reasonable under such circumstances, and does not constitute a penalty or forfeiture as concerns Buyer.  Upon Seller's receipt of the Deposit, the parties shall be released from any further obligation to each other with respect to the Property and this Contract, except as expressly provided in this Contract, the Bidding Procedures, Bid Procedures Order, or other Bankruptcy Court order.

7.2    <u>Default by Seller</u>.  If Seller fails to fully and timely perform any of its obligations hereunder or fails to close on the sale of the Property in accordance with this Contract for any reason, except Buyer's default herein, Buyer shall be entitled as its sole and exclusive remedies, either (a) to enforce specific performance of this Contract, or (b) to terminate this Contract by delivering written notice thereof to the Seller with a copy to the Escrow Agent, whereupon the Deposit shall be returned to Buyer.  Upon full payment of the Deposit, the parties shall be released from any further duties or obligation to each other with respect to the Property and this Contract, except those duties or obligations which survive the termination of the Agreement.

<div align="center">

**ARTICLE VIII**
**CONDEMNATION AND CASUALTY LOSS**

</div>

8.1    <u>Condemnation</u>.  In the event of any condemnation of all or any part of the Property prior to the date of Closing, Buyer may, at its sole option  (a) proceed with the Closing and acquire the Property as affected by such taking (together with all compensation and damages awarded or the right to receive the same), or (b) terminate this Contract whereupon the Deposit shall be returned to Buyer, and the parties shall be released from all further obligations hereunder, except as expressly provided in this Contract.  If Buyer elects option (a) above, Seller agrees (i) to assign to Buyer at the Closing its rights to such compensation and damages, and (ii) to cooperate with Buyer following the Closing, including without limitation promptly executing and delivering such documents that the condemning authority may require to verify the assignment.

8.2    <u>Casualty</u>.  If, prior to the Closing, the Property or any portion thereof, should be destroyed or damaged and the cost to repair same is reasonably estimated to be equal to or greater than $150,000.00, then Buyer shall have the option of (a) proceeding with the Closing and acquiring the Property as affected by such taking with an assignment of the proceeds of Seller's casualty insurance for all casualty damage (or the right to claim to receive such proceeds after Closing), plus a credit for the amount of any unpaid deductible, or (b) terminating this Contract whereupon the Deposit shall be promptly returned to and the parties shall be released from all further obligations hereunder. If the cost to repair, as determined in accordance with the foregoing, is less than $150,000.00, and provided that the damage is covered by Seller's casualty insurance policy, then Buyer shall not have the right to terminate this Contract by virtue of such damage and Buyer shall close and take the Property as affected by such events, subject to, at Buyer's option, either (i) receiving a credit against the Purchase Price for the cost to repair such damage or destruction as agreed to by Buyer and Seller, and Seller shall retain the right to make a claim against Seller's insurance and retain all proceeds thereof, or (ii) receiving an assignment of Seller's casualty insurance proceeds (or the right to claim to receive such proceeds after Closing), plus a credit for the amount of any unpaid deductible under Seller's fire and casualty insurance. If the damage is not covered by Seller's fire and casualty insurance policy, then Buyer reserves the right to terminate this Contract pursuant to this Section.  In the event of an assignment of insurance proceeds to Buyer, Seller shall cooperate with Buyer following the Closing, including without limitation promptly executing and delivering such documents to the insurance carrier as may be required by the insurance carrier to verify the assignment or prove the claim and promptly providing documentation which would assist Buyer in supporting the claim to the extent Seller has such documentation in its possession.

## ARTICLE IX
## COMMISSIONS

Each party represents and warrants to the other that, except for Keen-Summit Capital Partners LLC ("***Seller's Broker***"), there has been no other broker, finder, real estate agent or similar agent engaged in connection with the transaction contemplated hereby. Each party agrees that should any claim, other than that of Seller's Broker, be made for brokerage commissions or finder's fees by any other broker, finder or agent by, through or on account of any acts of the indemnifying party or its agents, employees or representatives, the indemnifying party will hold the other party free and harmless from and against any and all loss, liability, cost, damage and expense (including, without limitation, attorneys' fees, accountants' fees, court costs and interest) in connection therewith. The parties further agree that Buyer shall have no obligation to pay any portion of Seller's Broker's commission, and that at Closing, Seller will pay Seller's Broker its commission pursuant to separate Bankruptcy Court Order approving such payment. The provisions of this Article shall survive Closing. The Title Agent shall be authorized to deduct said commission from Seller's sale proceeds and pay same to Seller's Broker, pursuant to Bankruptcy Court Order.

## ARTICLE X
## NOTICE

Any and all notices, elections and communications permitted or required hereunder will be in writing, signed by the party making the same, and will be delivered to the addresses specified below by same day courier, sent by reputable overnight delivery service for next Business Day delivery, or transmitted by email (and in the event of a notice of termination of the Agreement or of default sent by email, a copy of such notice shall be sent by one of the other methods set forth in this Article no later than the next Business Day) before 5:00 p.m. (recipient's time) on a Business Day to the other party hereto. The effective date of such notice or communication will be the date of delivery in the case of same day courier, or overnight next Business Day delivery, or the date and time of transmission of an email, unless otherwise specified herein. Notwithstanding anything herein to the contrary, notices to and from each party's respective counsel in the manner provided for herein shall constitute valid notice to and from the parties under this Contract on or prior to Closing.

Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant hereto shall be as follows:

To Seller:                Fico Financial Corp.
500 Knights Run Ave., #914
Tampa, FL 33602
Attn: Christophe Rothpletz
Telephone: (561)818-1926
Email: crothpletz@gmail.com

With a copy to:         Ted R. Tamargo, Esquire
Buchanan Ingersoll & Rooney PC
401 E. Jackson Street, Suite 2400

Tampa, Florida, 33602
Telephone: (813) 769-7925
Email: ted.tamargo@bipc.com

With a copy to:                 Scott Underwood
                                Underwood Murray
                                100 N. Tampa Street, Suite 2325
                                Tampa, FL 33602
                                Telephone: 813-540-8402
                                Email: Sunderwood@underwoodmurray.com

To Buyer:                       _____
                                _____
                                _____
                                Attn: _____
                                Telephone: _____
                                Email: _____

With a copy to:                 _____
                                _____
                                _____
                                Attn: _____
                                Telephone: _____
                                Email: _____

To Escrow Agent/Title Agent:    Buchanan Ingersoll & Rooney PC
                                401 E. Jackson Street, Suite 2400
                                Tampa, Florida, 33602
                                Attn:  Ted R. Tamargo, Esquire
                                Telephone: (813) 769-7925
                                Email: ted.tamargo@bipc.com


## ARTICLE XI
## MISCELLANEOUS

11.1    Business Days.  The term "**Business Day**" or "**Business Days**" shall mean any day that is not a Saturday, Sunday, or public holiday observed by federally insured banks in the county in which the Real Property is located.

11.2    Performance of Acts on Business Days.  If the final date of any period, any date of performance, or any deadline date which is set forth in this Contract does not fall on a Business Day, then such date shall be automatically extended to the next following Business Day.  Time periods set forth in this Contract shall be calculated using calendar days unless Business Days are expressly provided for.

11.3   <u>Time is of the Essence</u>. Seller and Buyer agree that time is of the essence for the parties' performance under this Contract.

11.4   <u>Assignment</u>. Buyer shall not have the right to assign its rights under this Contract without the prior written consent of Seller, which may be withheld in Seller's sole discretion.

11.5   <u>Modifications or Amendments</u>.  No waiver, modification or termination of this Contract in whole or in part shall be valid, unless such waiver, modification or termination is in writing and is signed by both Seller and Buyer.  It shall not be necessary for the Escrow Agent to join in any waiver, modification or termination of this Contract in order to render same valid unless the Escrow Agent's duties hereunder are affected by a modification of this Contract.

11.6   <u>Successors and Assigns</u>.  The terms and provisions of this Contract are to apply to and bind the successors and permitted assigns of the parties hereto.

11.7   <u>Entire Agreement</u>.   This Contract constitutes the entire understanding and agreement of the parties and any and all prior agreements, understandings or representations are hereby terminated and cancelled in their entirety and are of no force or effect.  Except as expressly set forth herein, there are no representations or warranties, expressed or implied, made by either party to the other.

11.8   <u>Counterparts; Electronic Signature</u>.  This Contract may be executed in multiple counterparts, and all such executed counterparts shall constitute the same agreement.  It shall be necessary to account for only one (1) fully-executed counterpart in proving the existence, validity or content of this Contract.  Execution copies of this Contract may be delivered by email and the parties hereto agree to accept and be bound by email copies of signatures hereto.

11.9   <u>Severability</u>.  If any provision hereof is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall nonetheless remain in full force and effect.

11.10   <u>Section Headings</u>.  Section headings contained herein are for convenience only and shall not be considered in interpreting or construing this Contract.

11.11   <u>Binding Effect</u>.  Upon execution of this Contract by Buyer, this Contract constitutes an offer by Buyer to purchase the Property upon the terms and conditions set forth herein and is binding upon Buyer and irrevocable during the Irrevocability Period.  This Contract will be binding upon Seller upon execution of this Contract by Seller.

11.12   <u>Choice of Law</u>.  This Contract shall be governed by and construed in accordance with the internal laws of the State of Florida, without regard to the conflicts of laws principles thereof.

11.13   <u>Venue</u>.  The exclusive venue for all actions to enforce or interpret the provisions of this Contract will be the U.S. Bankruptcy Court, Middle District of Florida, unless such Bankruptcy Court cannot exercise jurisdiction or elects to abstain, then in the courts of the State of Florida located in the county in which the Real Property is located or the courts of the United

States located in the State of Florida having jurisdiction over matters arising in the county in which the Real Property is located.

11.14   <u>Joint Drafting</u>.  Seller and Buyer hereby agree that this Contract and the Exhibits have been jointly drafted, negotiated and agreed upon by Seller and Buyer and that any rule of contract interpretation that provides that ambiguity will be construed against the drafting party is inapplicable to this Contract and the exhibits and shall not be used in connection with the interpretation of this Contract or the exhibits.

11.15   <u>Expenses</u>.  Except as expressly otherwise provided herein, the parties shall each pay their own costs and expenses in connection with the negotiation, execution and delivery of this Contract.

11.16   <u>No Third Party Beneficiary</u>.  The provisions hereof and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller, Buyer, the Escrow Agent, and the Title Company (to the extent of the Escrow Agent's and Title Company's respective duties under this Contract) only and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions hereof or of the documents to be executed and delivered at Closing.

11.17   <u>No Consequential or Exemplary Damages</u>.  Notwithstanding anything contained in this Contract to the contrary, the parties agree that neither Buyer nor Seller shall be responsible for, obligated for, or liable for consequential, exemplary, punitive, or other similar damages to the other under any provision of this Contract or otherwise.

11.18   <u>Radon Gas</u>.  In compliance with §404.056, Florida Statutes, Buyer is hereby made aware of the following:   RADON GAS IS A NATURALLY OCCURRING RADIOACTIVE GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME. LEVELS OF RADON THAT EXCEED FEDERAL AND STATE GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN FLORIDA.   ADDITIONAL INFORMATION REGARDING RADON AND RADON TESTING MAY BE OBTAINED FROM YOUR COUNTY PUBLIC HEALTH UNIT.

11.19   <u>Captions</u>.  The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.  Should there be any conflict between any such caption and the section at the head of which it appears, the section and not such caption shall control and govern in the construction of this Contract.

11.20   <u>Number and Gender</u>.  In this Contract whenever the context so requires, the masculine gender includes the feminine and/or neuter, and vice versa, and the singular number includes the plural.

11.21   <u>No Recording</u>.  Neither this Contract nor any notice or memorandum of it shall be recorded in the public records of the county in which the Property is located without Seller's prior written consent.

11.22   <u>Waiver</u>.  The waiver by any party to this Contract of a breach or any provision of this Contract shall not be deemed a continuing waiver or a waiver of any subsequent breach whether of the same or another provision of this Contract.

11.23   <u>Survival</u>.  Except as otherwise expressly set forth in this Contract, any covenants, representations, warranties and other agreements set forth in this Contract shall not survive the Closing and shall merge into the Deed to be delivered by Seller to Buyer at Closing.

11.24   **<u>JURY WAIVER</u>.  BUYER AND SELLER DO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THEIR RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, OR UNDER OR IN CONNECTION WITH THIS CONTRACT, THE DOCUMENTS DELIVERED BY BUYER AT CLOSING OR SELLER AT CLOSING, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ANY ACTIONS OF EITHER PARTY ARISING OUT OF OR RELATED IN ANY MANNER WITH THIS CONTRACT OR THE PROPERTY (INCLUDING WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS CONTRACT AND ANY CLAIMS OR DEFENSES ASSERTING THAT THIS CONTRACT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR SELLER AND BUYER TO ENTER INTO AND ACCEPT THIS CONTRACT AND THE DOCUMENTS DELIVERED BY SELLER AND BUYER AT CLOSING AND SHALL SURVIVE THE CLOSING OF TERMINATION OF THIS CONTRACT.**

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF**, the parties have executed this Contract on the dates set forth below.

<div style="text-align: right;">

SELLER:

**FICO FINANCIAL CORP.**, a Florida corporation

By:_____
Print Name:_____
Print Title:_____

Date:    _____ \_\_\_\_, 2021

BUYER:

_____, a _____

By:_____
Print Name:_____
Print Title:_____

Date:    _____ \_\_\_\_, 2021

</div>

## <u>JOINDER BY ESCROW AGENT</u>

Buchanan Ingersoll & Rooney PC joins in this Contract for the purposes of agreeing to act as the Escrow Agent in accordance with the terms contained in this Contract.

<u>ESCROW AGENT</u>:

BUCHANAN INGERSOLL & ROONEY PC

By: _____

Name: _____

Title: _____

Date:    _____ ____, 2021

**EXHIBIT A**
**REAL PROPERTY LEGAL DESCRIPTION**

Commence at the Northeast corner of Government Lot 1, Section 19, Township 29 South, Range 18 East, Hillsborough County, Florida; thence N 89°01'01" W, 3,396.77 feet along the north boundary of said Section 19 to the POINT OF BEGINNING; thence S 00°58'59" W, 492.00 feet; thence N 89°01'01" W, 293.70 feet; thence N 00°58'59" E, 492.00 feet to said North line of Section 19; thence along said North line S 89°01'01" E, 293.70 feet to the POINT OF BEGINNING.

**EXHIBIT B**
**EXCLUDED PERSONAL PROPERTY**

[to be inserted]

# EXHIBIT C
## ESCROW CONDITIONS

(a)    The Escrow Agent shall be Buchanan Ingersoll & Rooney PC.  Escrow Agent agrees to hold in escrow and disburse the Deposit (subject to clearance of funds), in accordance with terms and conditions of this Contract, the Bid Procedures Order, and the Bidding Procedures.  Failure of the clearance of funds shall not excuse the performance by Buyer of this Contract.  All checks, money orders or drafts, if any, will be processed for collection in the normal course of business. Escrow Agent shall deposit the Deposit in its general trust account with SunTrust Bank (the "***Bank***"),  Escrow Agent's designated depository institution, and may commingle the Deposit with escrow funds of others.  Any interest earned on the Deposit shall be subject to the IOTA Rules of The Florida Bar and such interest shall not be payable to Seller, Buyer or Escrow Agent.  Escrow Agent shall be under no duty or obligation to give any notice, or to take or omit to take any other action with respect to the Deposit, except to make disbursements in accordance with the terms of this Contract and Court Order. Seller and Buyer confirm that Escrow Agent has informed them of the Bank in which the Deposit will be held, and Seller and Buyer expressly agree that each accepts the selection of the Bank as the depository institution for the Deposit.

(b)    Escrow Agent shall release the Deposit in accordance with the terms of this Contract. Escrow Agent may demand a signed consent by both Buyer and Seller before Escrow Agent will release Deposit, failing which Escrow Agent may interplead Deposit as provided below.  Escrow Agent's obligations under this Contract shall terminate when the entire Deposit has been released in accordance with this Contract or when Escrow Agent has resigned in accordance with this Section (c) below.

(c)    Escrow Agent may resign at any time upon the giving of fifteen (15) days' written notice to Seller and Buyer.  In such event, Seller and Buyer shall make good faith efforts to agree upon a successor escrow agent.  If a successor escrow agent is not appointed within fifteen (15) days after notice of such resignation, Escrow Agent may petition any court of competent jurisdiction to name a successor escrow agent and, upon the transfer of and new accounting for the Deposit to the successor escrow agent either designated by Seller and Buyer (together) or appointed by the court, Escrow Agent shall be fully relieved of all liability under this Contract to any and all parties. If Escrow Agent files an action or petitions the court as aforesaid, Buyer and Seller, jointly and severally, agree to indemnify and hold Escrow Agent harmless from any and all liability, costs, expenses, and attorneys' fees, at trial and appellate level, that Escrow Agent incurs in connection with such action.

(d)    Buyer and Seller shall jointly and severally indemnify and hold Escrow Agent (including officers, directors, partners, shareholders, employees and agents) harmless from and against any liability, loss, damage or expense (including, without limitation, reasonable and documented attorneys' fees) that Escrow Agent may incur in connection with any services related to work as Escrow Agent under this Contract, except to the extent such liability, loss, damage or expense arises from its willful misconduct or gross negligence.  The indemnification provided for under this Section (d) shall survive the termination of this Contract and the resignation or removal of Escrow Agent.

(e)      In the event that conflicting demands are made on Escrow Agent, or Escrow Agent, in good faith, believes that any demands with regard to the Deposit are in conflict or are unclear or ambiguous, Escrow Agent may bring an interpleader action in the Bankruptcy Court.   All reasonable costs and attorneys' fees incurred by Escrow Agent in connection with any such interpleader may be deducted by Escrow Agent from the Deposit prior to its deposit into the registry of the court subject to and after Court approval.  In any event, however, Escrow Agent may lay claim to or against the Deposit for its reasonable costs and attorneys' fees in connection with same, or in connection with any other litigation brought by any party in which Escrow Agent has been named a party, through final appellate review.

(f)      The parties acknowledge and agree that: (i) Seller's attorney is acting as Escrow Agent with respect to the Deposit; (ii) Seller's attorney may also obtain advice from his own firm about this Contract or Escrow Agent's duties hereunder; and (iii) Seller's attorney also represents the Bank in matters unrelated to this Contract.  The representations and relationships described in the previous sentence shall not for any reason serve as a basis to prevent, disqualify or otherwise result in such counsel not being able to continue to represent the above described parties in such matters. The parties agree that any conflict of interest is expressly waived with respect to Escrow Agent's representation of Seller in connection with this Contract, or Escrow Agent's representation of itself with respect to this Contract or its representation of the Bank in matters unrelated to this Contract. The agreements and waivers set forth in this paragraph shall survive the termination or expiration of this Contract.

(g)      Buyer and Seller each represents severally and not jointly that it (i) is not a person or entity whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (ii) does not engage in any dealings or transactions prohibited by Section 2 of such executive order, or is not otherwise associated with any such person or entity in any manner violative of Section 2 of such order, or (iii) is not a person or entity on the list of Specially Designated Nationals or Blocked Persons or is not in violations of the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order.  Buyer and Seller each agree to provide, at the request of the Escrow Agent, such other information as may be reasonably required by the Bank in connection with the foregoing representations.

**EXHIBIT D**
**RENT ROLL**

[to be inserted]

**EXHIBIT E**
**TRUSTEE'S DEED**

THIS INSTRUMENT PREPARED BY
AND RECORD AND RETURN TO

_____
_____
_____
_____

FOR USE BY RECORDING OFFICE

**TRUSTEE'S DEED**

THIS TRUSTEE'S DEED, is made this \_\_\_\_ day of _____, 202_, by **FICO FINANCIAL CORP.**, a Florida corporation, as debtor in possession of the estate of Fico Financial Corp., a debtor in the case styled *In re Parusa Investment Corporation and In re Fico Financial Corporation*, Case No. 8:21-bk-03854-MGW and Case No. 8:21-bk-03853-MGW respectively (jointly administered under 8:21-bk-03854-MGW) in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division ("**Grantor**"), whose post office address is _____, to _____, a _____ ("**Grantee**"), whose post office address is _____.

**W I T N E S E T H:**

Grantor, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration paid by Grantee, the receipt and sufficiency of which are hereby acknowledged, has granted, bargained and sold, and by these presents does grant, bargain and sell, to Grantee, Grantee's successors and assigns, as appropriate, forever, the following property situate in Hillsborough County, Florida, to-wit (the "**Property**"):

See **Exhibit A** attached hereto and made a part hereof.

**TOGETHER** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**THIS CONVEYANCE** is subject to the matters set forth on **Exhibit B** (the "**Permitted Exceptions**").

**TO HAVE AND TO HOLD**, the same in fee simple forever.

22

It is expressly understood and agreed between the parties that Grantee had adequate opportunity to inspect the Property and that the same is being purchased "AS-IS" with no warranty, express or implied, from Grantor.  Grantee releases, indemnifies, and holds harmless the Grantor from claims arising from acts or occurrences after the date of this Deed whether based on Grantor's negligence in whole or in part and/or claims based upon strict liability and/or product liability with respect to the physical properties or condition of the Property, including the environmental condition of the Property.  Grantee and its successors and assigns have and shall be deemed to have assumed all risk and liability with respect to the presence or remediation of all known and unknown toxic or hazardous substances, materials, or waste or other actual or potential environmental contaminates on, within or under the surface of the Property, including both known or unknown apparent, not apparent or latent, and whether existing prior to, at or subsequent to, transfer of the Property to Grantee.

[signature is on the following page]

23

**IN WITNESS WHEREOF,** Grantor has executed this Trustee's Deed as of the day and year first above written.

Signed, sealed and delivered
in the presence of:                                **GRANTOR:**

**WITNESSES:**                                      **FICO FINANCIAL CORP.**, a Florida
                                                    corporation

_____
Print Name:_____

                                                    _____
_____              Name: _____
Print Name:_____              Title: _____

STATE OF FLORIDA                    )
                                    ) ss:
COUNTY OF _____             )

        The foregoing instrument was acknowledged before me by means of _____ physical presence or _____ online notarization, this _____ day of _____, 2021 by _____, as _____ of **FICO FINANCIAL CORP.**, a Florida corporation on behalf of said corporation.  He is personally known to me or has produced _____ as identification.

[NOTARIAL SEAL]

                                _____
                                NOTARY PUBLIC, STATE OF FLORIDA

                                _____
                                Print Notary Public's Name

                                My Commission Expires:_____

24

**EXHIBIT A TO TRUSTEE'S DEED**
**<u>LEGAL DESCRIPTION</u>**

[to be inserted]

## EXHIBIT B TO TRUSTEE'S DEED
## <u>PERMITTED EXCEPTIONS</u>

1. Taxes and assessments for the year 202_ and subsequent years, which are not yet due and payable.

2. Rights of tenants, as tenants only, under written leases.

3. Environmental, building, zoning and other laws, rules, regulations, ordinances or bylaws that may affect the use, maintenance or ownership of the Property.

4. All reservations, restrictions, limitations, declarations, easements, and other matters of public record.

5. Matters which would be disclosed by an accurate and comprehensive survey of the Property.

## EXHIBIT F
## BILL OF SALE

KNOW ALL MEN BY THESE PRESENTS, that on _____ ___, 202__, **FICO FINANCIAL CORP.**, a Florida corporation ("**Seller**"), for and in consideration of the sum of Ten Dollars ($10.00) lawful money of the United States, paid by _____, a _____ ("**Buyer**"), to Seller the receipt whereof is hereby acknowledged, has granted, bargained, sold, transferred and delivered, and by these presents does grant, bargain, sell, transfer and deliver unto Buyer and the successors and assigns thereof, all appliances, trade or moveable fixtures, equipment, machinery, furniture, furnishings, decorations, and other tangible personal property located at the Property (as such term is defined in the Real Estate Purchase Contract, as may be amended, between Buyer and Seller) owned by Seller and all immoveable fixtures (collectively, the "**Personal Property**").

TO HAVE AND TO HOLD the same unto the Buyer and the executors, administrators, successors and assigns thereof forever.

AND Seller for itself and the heirs, executors, administrators, successors and assigns thereof, covenant to and with the Buyer, the executors, administrators, successors and assigns, that Seller is the owner of the Personal Property; that they are free from all encumbrances; and that Seller has good right to sell the same aforesaid free and clear of all liens, claim or encumbrances.

**It is expressly understood and agreed between the parties that Buyer had adequate opportunity to inspect the Personal Property and that the same is being purchased "AS-IS" with no warranty, express or implied, from Seller, as to the suitability thereof for any activity or use or particular purpose, fitness, merchantability, design, condition, capacity, performance, or any other aspect of the Personal Property or its material or workmanship; or as to compliance of the Personal Property with any laws, rules, ordinances or regulations of any governmental authority, environmental or otherwise. Buyer releases, indemnifies, and holds harmless the Seller from claims arising from acts or occurrences after the date of this Bill of Sale whether based on Seller's negligence in whole or in part and/or claims based upon strict liability and/or product liability with respect to the physical properties or condition of the Personal Property, including the environmental condition of the Personal Property. Buyer and its successors and assigns have and shall be deemed to have assumed all risk and liability with respect to the presence or remediation of all known and unknown toxic or hazardous substances, materials, or waste or other actual or potential environmental contaminates on, within or under the surface of the Personal Property, including both known or unknown apparent, not apparent or latent, and whether existing prior to, at or subsequent to, transfer of the Personal Property to Buyer.**

[signature page follows]

IN WITNESS WHEREOF, Seller and Buyer have executed this Bill of Sale on the day and year first above written.

SELLER:                                          BUYER:

**FICO FINANCIAL CORP.**, a Florida              _____
  corporation


By:_____             By:_____
Print Name:_____             Print Name:_____
Print Title:_____           Print Title:_____

**EXHIBIT G**
**ASSIGNMENT AND ASSUMPTION OF LEASES**
**AND OTHER INTANGIBLE PROPERTY**

THIS ASSIGNMENT AND ASSUMPTION OF LEASES AND INTANGIBLE PROPERTY (this "**Assignment**") is dated _____ _____, 2021 by and between **FICO FINANCIAL CORP.**, a Florida corporation ("**Assignor**") and _____, a _____ ("**Assignee**").

WHEREAS, the parties have entered into that certain Real Estate Purchase Contract dated as of _____ _____, 2021 ("**Contract**"), wherein Assignor agreed to sell and Assignee agreed to buy the "Property" described in the Contract; and

WHEREAS, Assignee desires to assume and Assignor desires to assign to Assignee the leases currently existing on the Property ("**Leases**"), and other Intangible Property, as such term is defined in the Contract, including but not limited to all  contracts, permits, licenses, and warranties that are listed on **Schedule 1**, attached hereto and incorporated herein, on the terms provided herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1.      Effective as of the Effective Date, Assignor hereby fully and forever assigns and transfers to Assignee all of Assignor's right, title, and interest, as landlord, to the Leases and other Intangible Property, including the contracts, permits, licenses, and warranties listed on **Schedule 1**, free and clear of all liens, claims and encumbrances (other than Permitted Exceptions, as defined in the Real Estate Purchase Contract).

2.      Assignee hereby assumes, and agrees to keep, perform, pay and discharge, any and all duties, liabilities and obligations of Assignor under the Leases and other Intangible Property listed on **Schedule 1** and Assignee hereby agrees to indemnify, protect, defend and hold Assignor and its partners, officers, employees, attorneys, representatives and agents harmless from and against any claims, suits, damages, liability, costs and/or expenses arising out of or resulting from any breach of or default in the performance of any of the duties, obligations or liabilities of Assignor under the Leases and other Intangible Property listed on **Schedule 1** from and after the Effective Date.

3.      This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, and all of which, together shall constitute one and the same instrument.

4.      This Assignment shall be governed by in all respects, including validity, interpretation and effect, and construed in accordance with the laws of the State of Florida and the United States Bankruptcy Code.

5.      This Assignment shall inure to the benefit of and be binding upon and enforceable against Assignor and Assignee and their respective heirs, devisees, estates, executors, successors, and assigns.

29

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first above written.

ASSIGNOR                                          ASSIGNEE


**FICO FINANCIAL CORP.**, a Florida               _____
 corporation


By:_____                      By:_____
Print Name:_____                      Print Name:_____
Print Title:_____                    Print Title:_____

30

**SCHEDULE 1**
**TO ASSIGNMENT AND ASSUMPTION**
**OF LEASES AND OTHER INTANGIBLE PROPERTY**

**The Leases:**

[To be completed]


**The Assigned Service Contracts:**

[To be completed]


**List of Permits, Licenses, and Warranties, etc.:**

[To be completed]

31

**EXHIBIT H**
**TENANT NOTICE LETTER**

_____, 202_

_____
_____
_____

Ladies and Gentlemen:

      This is to advise you that effective _____, 202__ the property located at _____, has been sold to _____.

      All payments of rent and other charges due under your lease, including the next scheduled installment of rent, should now be paid as directed by _____. Please make your rent checks payable to _____, and deliver all rent to the following address:

_____
_____
_____

      If you have any questions concerning this notice, please feel free to contact _____ at telephone number _____ or email address _____.

      Very truly yours,

_____

By:_____
Name:_____
Title:_____

32

**EXHIBIT I**
**ASSIGNED SERVICE CONTRACTS**

[to be inserted]

## **REAL ESTATE PURCHASE CONTRACT**

THIS REAL ESTATE PURCHASE CONTRACT (this "***Contract***") is made and entered into as of the _____ day of _____, 2021, by and between **FICO FINANCIAL CORP.**, a Florida corporation ("***Seller***"), and _____, a _____ ("***Buyer***").

## **ARTICLE I**
## **PURCHASE AND SALE**

1.1    <u>Agreement of Purchase and Sale</u>.  Subject to the terms and conditions set forth herein and for the consideration stated herein, Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller all of the surface of that certain real property located at 5850 W. Cypress Street, Tampa, Florida 33607, under Folio No. 112501-0300 and more particularly described on **<u>Exhibit A</u>** attached hereto and all structures and buildings located thereon (the "***Real Property***"). The term "***Property***" as used herein shall include: (a) the surface of the Real Property, (b) all easements, rights of way, privileges, appurtenances running with the Real Property, if any, including but not limited to, all assignable utility and developmental rights allocated or reserved thereto; (c) the Personal Property (as hereinafter defined); and (d) and Intangible Property (as hereinafter defined).  For purposes of this Contract, "***Personal Property***" means all appliances, trade or moveable fixtures, equipment, machinery, furniture, furnishings, decorations, and other tangible personal property owned by Seller, if any, that remains on the Property at Closing (as hereinafter defined) and used in the operation and maintenance thereof, but excluding any such personal property owned by the Tenants (as hereinafter defined) or occupants of the Property or as listed on **<u>Exhibit B</u>** attached hereto, and all immoveable fixtures.  For purposes of this Contract, "***Intangible Property***" means the Leases (as hereinafter defined) and the following items, to the extent such items exist, which relate to the Property, and are transferrable: (i) certificates of occupancy; (ii) any plans and specifications and other architectural and engineering drawings for the improvements; and (iii) any of the following which Buyer elects to assume: warranties issued to the Seller in connection with the construction of any improvements or otherwise, the Assigned Service Contracts (as hereinafter defined) and other rights related to the Property, including governmental permits, approvals and licenses (including any pending applications).

1.2    <u>Purchase Price</u>. The purchase price for the Property shall be _____ and No/100 Dollars ($_____.00) ("***Purchase Price***").  The Purchase Price shall be payable in U.S. currency as follows:

(a)    <u>Initial Deposit</u>.  Buyer has deposited with Buchanan Ingersoll & Rooney PC, as escrow agent (the "***Escrow Agent***") the sum of _____ and No/100 Dollars ($_____.00) (the "***Initial Deposit***");

(b)    <u>Additional Deposit</u>.  If Buyer is the Successful Bidder, within one (1) Business Day following the Auction, Buyer shall deposit with the Escrow Agent an additional deposit (the "***Additional Deposit***") in an amount equal to the difference between (i) ten percent (10%) of the Purchase Price, minus (ii) the amount of the Initial Deposit.  For the avoidance of doubt, the Initial Deposit and the Additional Deposit (collectively, the "***Deposit***") shall equal ten percent (10%) of the Purchase Price.  The Deposit will be credited towards payment of the Purchase Price at Closing. The Escrow Agent shall hold and disburse the Deposit in accordance

with this Contract (including Escrow Conditions set forth in **Exhibit C** attached hereto), the Bid Procedures Order (as hereinafter defined), and the Bidding Procedures (as hereinafter defined); and

        (c)    <u>Balance</u>. The balance of the Purchase Price, plus or minus net adjustments and/or prorations provided for herein, shall be paid in cash through Escrow (as hereinafter defined) in the form of wired funds or other immediately available federal funds payable to the order of Escrow Agent on or before the Closing Date (as hereinafter defined).

        1.5    <u>No Financing Contingency</u>. This is a "cash" transaction with no financing contingency. Buyer's obligations hereunder are not in any way conditional upon, or qualified by, Buyer's ability to obtain financing of any type or nature whatsoever to consummate the transaction contemplated hereby.

        1.6    <u>Bankruptcy Case</u>. Buyer acknowledges that Seller is a debtor in a Chapter 11 bankruptcy proceeding pending in the United States Bankruptcy Court Middle District of Florida, Tampa Division (the "***Bankruptcy Court***") in that certain case styled <u>*In re Parusa Investment Corporation and Fico Financial Corporation*</u>, Case No. 8:21-bk-03854-MGW and Case No. 8:21-bk-03853-MGW (jointly administered under 8:21-bk-03854-MGW, the "***Bankruptcy Case***"). The Property is being sold in accordance with Bidding Procedures approved by the Bankruptcy Court (the "***Bidding Procedures***") attached to the Order approving those Bidding Procedures by the Bankruptcy Court on October 26, 2021, at Docket Entry No. 95 in the Bankruptcy Case (the "***Bid Procedures Order***"), the terms of such Bidding Procedures and Bid Procedures Order are hereby incorporated herein by reference. Buyer agrees to be bound by the Bidding Procedures, the Bid Procedures Order, and all requirements of the United States Bankruptcy Code and the Bankruptcy Court, including, without limitation, satisfying the requirements to be a Qualified Bidder or a Backup Bidder, and acknowledgement of the irrevocability of a Bid during the Irrevocability Period and that any Bid is subject to higher and better Bids at the Auction. This Contract and the sale of the Property is subject to competitive bidding and higher and better offers at an Auction. All capitalized terms which are used but not defined in this Contract shall have the meanings ascribed to such terms in the Bidding Procedures.

### ARTICLE II
### TITLE AND SURVEY

        2.1    <u>Permitted Exceptions</u>. The Property shall be conveyed subject to the following matters (collectively the "***Permitted Exceptions***"):

        (a)    Real property taxes, assessments and other governmental taxes, fees, charges, or assessments levied or assessed against the Property which are a lien not yet due and payable and subsequent years, which taxes shall be prorated at Closing;

        (b)    Rights of tenants listed on the rent roll attached as **Exhibit D** (collectively, the "***Tenants***") under written leases (collectively, the "***Leases***"), all of which Leases shall be assumed by Seller and assigned by Seller to Buyer at Closing;

(c)     Environmental, building, zoning and other laws, rules, regulations, ordinances or bylaws that may affect the use, maintenance or ownership of the Property;

(d)     All reservations, restrictions, limitations, declarations, easements, and other matters of public record; and

(e)     Matters which would be disclosed by an accurate and comprehensive survey of the Real Property.

2.2     <u>Commitment for Title Insurance</u>.  Seller has provided Buyer with a commitment for an owner's policy of Title Insurance (the "***Title Commitment***") issued by Buchanan Ingersoll & Rooney PC ("***Title Agent***") as agent for First American Title Insurance Company ("***Title Company***") setting forth the state of the title to the Property and all exceptions thereto, including the easements, restrictions, rights-of-way, covenants, reservations, and other conditions, if any, affecting the Property which would appear in an Owner's Policy of Title Insurance (the "***Owner's Policy***"). Prior to Closing, Seller shall order an updated Title Commitment from the Title Company naming the Buyer as the proposed insured and in the full amount of the Purchase Price.  Buyer shall be responsible for all costs imposed by Title Company in connection with the issuance of the Owner's Policy.  Buyer shall also be responsible for the costs of other endorsements as Buyer may require. Additionally, if Buyer defaults under or terminates this Contract, Buyer shall pay for the cost of issuing the Commitment, including without limitation, all costs associated with the title search.

2.3     <u>Survey</u>.  Buyer, at its cost, may obtain a current ALTA survey of the Real Property or an update to any survey of the Real Property in the Data Room (as hereinafter defined) (the "***Survey***"). This Contract shall not be subject to any survey contingency or conditions.

## ARTICLE III
## INSPECTIONS, AS-IS, AND CONDITION OF PROPERTY

3.1     <u>Delivery of Materials</u>.  Prior to Buyer executing this Contract, Seller has made available in the data room established with respect to the Property pursuant to the Bidding Instructions (the "***Data Room***") for inspection by Buyer certain non-proprietary information related to the Property, which may include copies of engineering and geotechnical studies; title commitments; title policies; surveys; plans; permits related to the Property; reports and inspections relating to the environmental and physical condition of the Property; the Leases; and service contracts, maintenance agreements, or any other contracts or agreements related to the Property (collectively, the "***Property Information***").  The Property Information has been made available to Buyer without recourse, representation or warranty and shall be subject to the conditions and limitations set forth in the Bidding Procedures.  Any reliance by Buyer on the Property Information shall be at Buyer's risk.

3.2     <u>Inspections</u>. Buyer understands, covenants and agrees that prior to execution of this Contract, Buyer had an adequate opportunity to inspect the Property and finds the Property to be acceptable and Buyer shall purchase the Property "as is" are further described in Section 3.3 below.

3

3.3   <u>As-Is</u>. It is expressly understood, covenanted, and agreed between the parties that the Property shall be purchased "as is," including without limitation, with no warranty, express or implied, from Seller, as to the suitability thereof for any activity or use or particular purpose, fitness, merchantability, design, condition, capacity, performance, or any other aspect of the Property or its material or workmanship; or as to compliance of the Property with any laws, rules, ordinances or regulations of any governmental authority, environmental or otherwise. Buyer releases, indemnifies, and holds harmless Seller from claims arising from acts or occurrences after the Closing whether based on Seller's negligence in whole or in part and/or claims based upon strict liability and/or product liability with respect to the physical properties or condition of the Property, including the environmental condition of the Property. Buyer and its successors and assigns have and shall be deemed to have assumed all risk and liability with respect to the presence or remediation of all known and unknown toxic or hazardous substances, materials, or waste or other actual or potential environmental contamination on, within or under the surface of the Property, including both known or unknown apparent, not apparent or latent, and whether existing prior to, at or subsequent to, transfer of the Property to Buyer and Buyer releases the Seller from any and all claims arising from the foregoing environmental conditions. The foregoing will survive Closing and shall appear on the Deed (as hereinafter defined) and the Bill of Sale (as hereinafter defined).

## ARTICLE IV
## TENANTS

The deadline for any current tenant of the Debtors (under a real property or telecommunications lease) to object to the assumption and assignment of its lease or to assert a Cure Amount (as defined in the Bid Procedures Order) is November 12, 2021.

Seller shall be responsible for all Cure Amounts unless Seller provides explicit notice to Buyer before the deadline to submit a Qualified Bid (November 30, 2021 at 4:00 pm) of specific Cure Amounts that Seller shall not be responsible for. Seller's obligations shall not include future or existing obligations to fund tenant improvements for which such improvements have not been made to the Property and to the extent of partially completed tenant improvements, Seller shall only be responsible for that portion of any tenant improvement allowance or reimbursement owed as of the Closing Date. Buyer shall be obligated for all other tenant improvement obligations.

## ARTICLE V
## CLOSING AND ESCROW

5.1   <u>Time and Place</u>. The closing of the transaction contemplated hereby (the "***Closing***") shall be the date upon which the parties to this Contract exchange documents completing the sale transaction contemplated therein, following the moment upon which all conditions and obligations complete such transaction have been satisfied, other than those conditions that by their nature are satisfied at the Closing itself, which Closing shall occur within three business (3) days of the entry of an order approving the Successful Bidder and Back-up Bidder, unless otherwise required by the Title Company, then in no event later than three (3) business days following the entry of a Final Order (as defined in the Bidding Procedures) (the date on which the transaction contemplated hereby closes is hereinafter called the "***Closing Date***").

The terms Closing Date and Closing are used herein interchangeably as the context permits.   The Closing shall be achieved on the Closing Date by delivery of documents and funds in escrow ("*Escrow*") to the Escrow Agent and it shall not be necessary to have an "in person" Closing.  The Escrow Agent will act as escrow agent.   This Contract shall be considered as the escrow instructions between the parties.  If the Escrow Agent shall require further escrow instructions, Buyer shall request that the Escrow Agent promptly prepare escrow instructions for the purchase and sale of the Property provided that such terms and provisions shall not be inconsistent herewith. The escrow instructions shall provide, in the event of any conflict between the terms and conditions of this Contract and said escrow instructions, then the terms and conditions of this Contract and any related Court order shall control.   WITH RESPECT TO THE CLOSING, TIME OF PERFORMANCE BY THE BUYER IS OF THE ESSENCE.

5.2    <u>Seller's Obligations at Closing</u>.  On or before the Closing, Seller shall deliver to the Escrow Agent the following:

(a)    a duly executed and acknowledged trustee's deed (the "***Deed***"), in the form attached as **<u>Exhibit E</u>**;

(b)    two (2) duly executed counterparts of the Bill of Sale conveying title to the Personal Property (the "***Bill of Sale***"), in the form attached as **<u>Exhibit F</u>**;

(c)    two (2) duly executed counterparts of the Assignment and Assumption of Leases and other Intangible Property in the form attached hereto as **<u>Exhibit G</u>**;

(d)    a duly executed copy of the closing statement prepared by the Title Company (the "***Closing Statement***");

(e)    a FIRPTA Affidavit duly executed by Seller, stating that Seller is not a "foreign person" as defined in the federal Foreign Investment in Real Property Tax Act of 1980 and the 1984 Tax Reform Act and otherwise meeting the requirements of such Acts;  and

(f)    an order of the Bankruptcy Court approving the Seller's assumption of the Assigned Service Contracts and assignment thereof to Buyer, the closing pursuant to this the Contract and authorizing Seller to effectuate the Contract and execute related documents.

5.3    <u>Buyer's Obligations at Closing</u>.  On or before the Closing, Buyer shall deliver to Seller via delivery to the Escrow Agent the following:

(a)    the balance of the Purchase Price by wire transfer of immediately available funds, subject to credits and prorations as set forth in this Contract;

(b)    a duly executed copy of the Closing Statement;

(c)    two (2) duly executed counterparts of the Bill of Sale;

(d)    two (2) duly executed counterparts of the Assignment and Assumption of Lease and other Intangible Property in the form attached hereto as **<u>Exhibit G</u>**;

(e)  a tenant notification letter on the form attached hereto as **Exhibit H**, notifying the Tenants of the transfer of ownership of the Property to Buyer; and

(f)  such evidence as the Title Company may reasonably require as to the authority of the person or persons executing documents on behalf of Buyer.

5.4  <u>Taxes and Prorations</u>. The following shall be prorated as of the Closing Date:

(a)  Real property taxes and assessments, property owners association assessments, and all other taxes and assessments applicable to the Property, if any, shall be prorated as of the date of Closing (on a calendar year basis) with the day of Closing being charged to Buyer. Any apportionment of real property taxes or assessments to be made with respect to a tax year for which either the tax rate or assessed valuation or both have not yet been fixed shall be upon the basis of the tax rate and/or assessed valuation last fixed.  Special assessments due and payable prior to the Closing shall be paid by Seller.  If special assessments are payable in installments then installments due prior to the year of the Closing Date shall be paid by Seller and installments due after the year of the Closing Date shall be paid by Buyer.  Special assessment installments due for the year of the Closing Date shall be prorated between Buyer and Seller.  All taxes assessed against the Property for prior years due to a change in use or ownership of the Property and any rollback taxes shall be assumed and paid by Buyer.  All prorations of taxes and assessments shall be final.

(b)  All rents (and other amounts due and payable by tenants under the Leases including, but not limited to minimum rent, common area maintenance, tax and insurance reimbursements to be made by the tenants) actually received, shall be prorated as of the Closing Date, based on the actual days in the month of the Closing.  If the Closing occurs before rents and all other amounts due and payable by the tenants under the Leases have actually been received for the month in which the Closing occurs, the apportionment of such rents and other amounts shall be upon the basis of such rents and other amounts actually received by Seller.  Subsequent to Closing, if any such rents and other amounts are actually received by Buyer or Seller, all such amounts shall first be applied to current rents due and payable for the month in which the same are received, second, to rents due and payable for the month in which the Closing occurs, third, to post-Closing past due rents, fourth, to other past-due rents due and payable for pre-Closing periods, and fourth, the balance shall immediately be paid by Buyer to Seller or Seller to Buyer, as applicable.  Buyer shall use diligent, good-faith efforts and in the ordinary course of business (without being required to initiate legal proceedings or evict any tenant) to collect any such rents and other amounts not apportioned at the Closing for the benefit of Seller and shall continue to collect any such rents for the benefit of Seller for a six (6) month period commencing on  Closing. The provisions of this Section shall survive Closing.

(c)  Any security deposit under any Lease held by Seller at the time of Closing shall be transferred to Buyer on the Closing Date and Buyer shall assume Seller's obligations related to such security deposits.  Said transfer may be treated as a credit on the Closing Statement.

(d)  If any errors or omissions are made at the Closing regarding prorations, the parties shall make the appropriate corrections promptly after the discovery thereof.

5.5  <u>Closing Costs</u>.

6

(a)  Seller's Costs.  Seller shall pay the following:

(i)  The expense of obtaining and recording any title curative matters which Seller has elected to cure; and

(ii)  any other costs set forth in this Contract to be paid by Seller.

(b)  Buyer's Costs.  Buyer shall pay the following:

(i)  transfer taxes on the Deed;

(ii)  the costs of recording the Deed;

(iii)  the cost of the Survey;

(iv)  the costs of any third party reports ordered by Buyer; and

(v)  any other costs set forth in this Contract to be paid by Buyer.

5.6  Assigned Service Contracts. Attached hereto as **Exhibit I** is a complete list of all existing written or oral maintenance, management, or other service contracts or agreements, as amended, that Seller has identified as affecting Property (the "***Assigned Service Contracts***"). Unless Buyer removes an Assigned Service Contract from **Exhibit I** upon execution of this Contract and also provides separate email Notice to Seller of such removal on or before Closing, Seller will assume the Assigned Service Contracts on **Exhibit I** and assign the Assigned Service Contracts to Buyer at Closing pursuant to the Assignment and Assumption of Lease and other Intangible Property (subject to separate Court motion and approval).  Buyer shall receive a credit for any "Cure Amounts" associated with assumption and assignment of the Assigned Service Contracts.

### ARTICLE VI
### REPRESENTATIONS AND WARRANTIES

6.1  Representations and Warranties of Seller. Seller hereby represents and warrants to Buyer as of the Closing Date that:

(a)  Seller has the power and authority to enter into this Contract and all other agreements to be executed and delivered by Seller pursuant to the terms and provisions hereof, to perform its obligations hereunder and thereunder, and to consummate the transaction contemplated hereby;

(b)  This Contract has been duly executed and delivered by Seller and this Contract constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms, as approved by the Bankruptcy Court;

(c)  Seller is not a "foreign person" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended and any related regulations; and

(d)     For purposes of a Specially Designated Nationals and Blocked Persons Search, Seller's name is Fico Financial Corp., a Florida corporation.

6.2     <u>Representations and Warranties of Buyer</u>.  Buyer hereby represents and warrants to Seller as of the date the Buyer executes this Contract and as of the Closing Date that:

(a)     Buyer is a _____, duly organized and in good standing under the laws of _____.  Buyer has complete power and authority to enter into this Contract and all other agreements to be executed and delivered by Buyer pursuant to the terms and provisions hereof, to perform its obligations hereunder and thereunder, and to consummate the transaction contemplated hereby;

(b)     This Contract has been duly executed and delivered by Buyer and this Contract constitutes the legal, valid and binding obligation of Buyer enforceable in accordance with its terms;

(c)     The execution, delivery and performance of this Contract and any other agreement contemplated hereby and the consummation of the transaction contemplated hereby or thereby do not, with or without the passage of time and/or the giving of notice, (i) conflict with, constitute a breach, violation or termination of any provision of any contract or other agreement to which Buyer is a party, (ii) conflict with or violate the organizational documents of Buyer, or (iii) violate any law, statute, ordinance, regulation, judgment, writ, injunction, rule, decree, order or any other restriction of any kind or character applicable to Buyer; and

(d)     For purposes of a Specially Designated Nationals and Blocked Persons Search, Buyer's name is, _____.

The foregoing representations and warranties shall survive Closing for a period of one hundred eighty (180) days.

<div align="center">

**ARTICLE VII**
**DEFAULT**

</div>

7.1     <u>Default by Buyer</u>:  If Buyer fails to fully and timely perform any of its obligations hereunder or fails to close on the purchase of the Property in accordance with this Contract for any reason, except Seller's default or the termination of this Contract by Buyer as expressly permitted herein, Seller shall be entitled to retain the Deposit, and such Deposit shall be deemed forfeited by Buyer, shall not be credited against the purchase price for the benefit of a Back-up Bidder, and Seller specifically reserves the right to seek all available damages from Buyer.  It is acknowledged by Buyer that the actual damages which will be sustained by Seller in such event are not easily quantifiable at this time, and that retention by Seller of the Deposit under such circumstances is reasonable under such circumstances, and does not constitute a penalty or forfeiture as concerns Buyer.  Upon Seller's receipt of the Deposit, the parties shall be released from any further obligation to each other with respect to the Property and this Contract, except as expressly provided in this Contract, the Bidding Procedures, Bid Procedures Order, or other Bankruptcy Court order.

7.2     Default by Seller.  If Seller fails to fully and timely perform any of its obligations hereunder or fails to close on the sale of the Property in accordance with this Contract for any reason, except Buyer's default herein, Buyer shall be entitled as its sole and exclusive remedies, either (a) to enforce specific performance of this Contract, or (b) to terminate this Contract by delivering written notice thereof to the Seller with a copy to the Escrow Agent, whereupon the Deposit shall be returned to Buyer.  Upon full payment of the Deposit, the parties shall be released from any further duties or obligation to each other with respect to the Property and this Contract, except those duties or obligations which survive the termination of the Agreement.

## ARTICLE VIII
## CONDEMNATION AND CASUALTY LOSS

8.1     Condemnation.  In the event of any condemnation of all or any part of the Property prior to the date of Closing, Buyer may, at its sole option  (a) proceed with the Closing and acquire the Property as affected by such taking (together with all compensation and damages awarded or the right to receive the same), or (b) terminate this Contract whereupon the Deposit shall be returned to Buyer, and the parties shall be released from all further obligations hereunder, except as expressly provided in this Contract.  If Buyer elects option (a) above, Seller agrees (i) to assign to Buyer at the Closing its rights to such compensation and damages, and (ii) to cooperate with Buyer following the Closing, including without limitation promptly executing and delivering such documents that the condemning authority may require to verify the assignment.

8.2     Casualty.  If, prior to the Closing, the Property or any portion thereof, should be destroyed or damaged and the cost to repair same is reasonably estimated to be equal to or greater than $150,000.00, then Buyer shall have the option of (a) proceeding with the Closing and acquiring the Property as affected by such taking with an assignment of the proceeds of Seller's casualty insurance for all casualty damage (or the right to claim to receive such proceeds after Closing), plus a credit for the amount of any unpaid deductible, or (b) terminating this Contract whereupon the Deposit shall be promptly returned to and the parties shall be released from all further obligations hereunder. If the cost to repair, as determined in accordance with the foregoing, is less than $150,000.00, and provided that the damage is covered by Seller's casualty insurance policy, then Buyer shall not have the right to terminate this Contract by virtue of such damage and Buyer shall close and take the Property as affected by such events, subject to, at Buyer's option, either (i) receiving a credit against the Purchase Price for the cost to repair such damage or destruction as agreed to by Buyer and Seller, and Seller shall retain the right to make a claim against Seller's insurance and retain all proceeds thereof, or (ii) receiving an assignment of Seller's casualty insurance proceeds (or the right to claim to receive such proceeds after Closing), plus a credit for the amount of any unpaid deductible under Seller's fire and casualty insurance. If the damage is not covered by Seller's fire and casualty insurance policy, then Buyer reserves the right to terminate this Contract pursuant to this Section.  In the event of an assignment of insurance proceeds to Buyer, Seller shall cooperate with Buyer following the Closing, including without limitation promptly executing and delivering such documents to the insurance carrier as may be required by the insurance carrier to verify the assignment or prove the claim and promptly providing documentation which would assist Buyer in supporting the claim to the extent Seller has such documentation in its possession.

## ARTICLE IX
## COMMISSIONS

Each party represents and warrants to the other that, except for Keen-Summit Capital Partners LLC ("***Seller's Broker***"), there has been no other broker, finder, real estate agent or similar agent engaged in connection with the transaction contemplated hereby. Each party agrees that should any claim, other than that of Seller's Broker, be made for brokerage commissions or finder's fees by any other broker, finder or agent by, through or on account of any acts of the indemnifying party or its agents, employees or representatives, the indemnifying party will hold the other party free and harmless from and against any and all loss, liability, cost, damage and expense (including, without limitation, attorneys' fees, accountants' fees, court costs and interest) in connection therewith. The parties further agree that Buyer shall have no obligation to pay any portion of Seller's Broker's commission, and that at Closing, Seller will pay Seller's Broker its commission pursuant to separate Bankruptcy Court Order approving such payment. The provisions of this Article shall survive Closing. The Title Agent shall be authorized to deduct said commission from Seller's sale proceeds and pay same to Seller's Broker, pursuant to Bankruptcy Court Order.

## ARTICLE X
## NOTICE

Any and all notices, elections and communications permitted or required hereunder will be in writing, signed by the party making the same, and will be delivered to the addresses specified below by same day courier, sent by reputable overnight delivery service for next Business Day delivery, or transmitted by email (and in the event of a notice of termination of the Agreement or of default sent by email, a copy of such notice shall be sent by one of the other methods set forth in this Article no later than the next Business Day) before 5:00 p.m. (recipient's time) on a Business Day to the other party hereto. The effective date of such notice or communication will be the date of delivery in the case of same day courier, or overnight next Business Day delivery, or the date and time of transmission of an email, unless otherwise specified herein. Notwithstanding anything herein to the contrary, notices to and from each party's respective counsel in the manner provided for herein shall constitute valid notice to and from the parties under this Contract on or prior to Closing.

Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant hereto shall be as follows:

To Seller:                    Fico Financial Corp.
                              500 Knights Run Ave., #914
                              Tampa, FL 33602
                              Attn:  Christophe Rothpletz
                              Telephone: (561)818-1926
                              Email: crothpletz@gmail.com

With a copy to:               Ted R. Tamargo, Esquire
                              Buchanan Ingersoll & Rooney PC
                              401 E. Jackson Street, Suite 2400

Tampa, Florida, 33602
Telephone: (813) 769-7925
Email: ted.tamargo@bipc.com

With a copy to:            Scott Underwood
                          Underwood Murray
                          100 N. Tampa Street, Suite 2325
                          Tampa, FL 33602
                          Telephone: 813-540-8402
                          Email: Sunderwood@underwoodmurray.com

To Buyer:                 _____
                          _____
                          _____
                          Attn: _____
                          Telephone: _____
                          Email: _____

With a copy to:           _____
                          _____
                          _____
                          Attn: _____
                          Telephone: _____
                          Email: _____

To Escrow Agent/Title Agent:  Buchanan Ingersoll & Rooney PC
                          401 E. Jackson Street, Suite 2400
                          Tampa, Florida, 33602
                          Attn:  Ted R. Tamargo, Esquire
                          Telephone: (813) 769-7925
                          Email: ted.tamargo@bipc.com

## ARTICLE XI
## MISCELLANEOUS

11.1    Business Days.  The term "**Business Day**" or "**Business Days**" shall mean any day that is not a Saturday, Sunday, or public holiday observed by federally insured banks in the county in which the Real Property is located.

11.2    Performance of Acts on Business Days.  If the final date of any period, any date of performance, or any deadline date which is set forth in this Contract does not fall on a Business Day, then such date shall be automatically extended to the next following Business Day.  Time periods set forth in this Contract shall be calculated using calendar days unless Business Days are expressly provided for.

11.3    <u>Time is of the Essence</u>. Seller and Buyer agree that time is of the essence for the parties' performance under this Contract.

11.4    <u>Assignment</u>.  Buyer shall not have the right to assign its rights under this Contract without the prior written consent of Seller, which may be withheld in Seller's sole discretion.

11.5    <u>Modifications or Amendments</u>.  No waiver, modification or termination of this Contract in whole or in part shall be valid, unless such waiver, modification or termination is in writing and is signed by both Seller and Buyer.  It shall not be necessary for the Escrow Agent to join in any waiver, modification or termination of this Contract in order to render same valid unless the Escrow Agent's duties hereunder are affected by a modification of this Contract.

11.6    <u>Successors and Assigns</u>.  The terms and provisions of this Contract are to apply to and bind the successors and permitted assigns of the parties hereto.

11.7    <u>Entire Agreement</u>.  This Contract constitutes the entire understanding and agreement of the parties and any and all prior agreements, understandings or representations are hereby terminated and cancelled in their entirety and are of no force or effect.  Except as expressly set forth herein, there are no representations or warranties, expressed or implied, made by either party to the other.

11.8    <u>Counterparts; Electronic Signature</u>.  This Contract may be executed in multiple counterparts, and all such executed counterparts shall constitute the same agreement.  It shall be necessary to account for only one (1) fully-executed counterpart in proving the existence, validity or content of this Contract.  Execution copies of this Contract may be delivered by email and the parties hereto agree to accept and be bound by email copies of signatures hereto.

11.9    <u>Severability</u>.  If any provision hereof is determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of this Contract shall nonetheless remain in full force and effect.

11.10    <u>Section Headings</u>.  Section headings contained herein are for convenience only and shall not be considered in interpreting or construing this Contract.

11.11    <u>Binding Effect</u>.  Upon execution of this Contract by Buyer, this Contract constitutes an offer by Buyer to purchase the Property upon the terms and conditions set forth herein and is binding upon Buyer and irrevocable during the Irrevocability Period.  This Contract will be binding upon Seller upon execution of this Contract by Seller.

11.12    <u>Choice of Law</u>.  This Contract shall be governed by and construed in accordance with the internal laws of the State of Florida, without regard to the conflicts of laws principles thereof.

11.13    <u>Venue</u>.  The exclusive venue for all actions to enforce or interpret the provisions of this Contract will be the U.S. Bankruptcy Court, Middle District of Florida, unless such Bankruptcy Court cannot exercise jurisdiction or elects to abstain, then in the courts of the State of Florida located in the county in which the Real Property is located or the courts of the United

States located in the State of Florida having jurisdiction over matters arising in the county in which the Real Property is located.

11.14   Joint Drafting.  Seller and Buyer hereby agree that this Contract and the Exhibits have been jointly drafted, negotiated and agreed upon by Seller and Buyer and that any rule of contract interpretation that provides that ambiguity will be construed against the drafting party is inapplicable to this Contract and the exhibits and shall not be used in connection with the interpretation of this Contract or the exhibits.

11.15   Expenses.  Except as expressly otherwise provided herein, the parties shall each pay their own costs and expenses in connection with the negotiation, execution and delivery of this Contract.

11.16   No Third Party Beneficiary.  The provisions hereof and of the documents to be executed and delivered at Closing are and will be for the benefit of Seller, Buyer, the Escrow Agent, and the Title Company (to the extent of the Escrow Agent's and Title Company's respective duties under this Contract) only and are not for the benefit of any third party, and accordingly, no third party shall have the right to enforce the provisions hereof or of the documents to be executed and delivered at Closing.

11.17   No Consequential or Exemplary Damages.  Notwithstanding anything contained in this Contract to the contrary, the parties agree that neither Buyer nor Seller shall be responsible for, obligated for, or liable for consequential, exemplary, punitive, or other similar damages to the other under any provision of this Contract or otherwise.

11.18   Radon Gas.  In compliance with §404.056, Florida Statutes, Buyer is hereby made aware of the following:   RADON GAS IS A NATURALLY OCCURRING RADIOACTIVE GAS THAT, WHEN IT HAS ACCUMULATED IN A BUILDING IN SUFFICIENT QUANTITIES, MAY PRESENT HEALTH RISKS TO PERSONS WHO ARE EXPOSED TO IT OVER TIME. LEVELS OF RADON THAT EXCEED FEDERAL AND STATE GUIDELINES HAVE BEEN FOUND IN BUILDINGS IN FLORIDA.  ADDITIONAL INFORMATION REGARDING RADON AND RADON TESTING MAY BE OBTAINED FROM YOUR COUNTY PUBLIC HEALTH UNIT.

11.19   Captions.  The captions appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.  Should there be any conflict between any such caption and the section at the head of which it appears, the section and not such caption shall control and govern in the construction of this Contract.

11.20   Number and Gender.  In this Contract whenever the context so requires, the masculine gender includes the feminine and/or neuter, and vice versa, and the singular number includes the plural.

11.21   No Recording.  Neither this Contract nor any notice or memorandum of it shall be recorded in the public records of the county in which the Property is located without Seller's prior written consent.

11.22   <u>Waiver</u>.  The waiver by any party to this Contract of a breach or any provision of this Contract shall not be deemed a continuing waiver or a waiver of any subsequent breach whether of the same or another provision of this Contract.

11.23   <u>Survival</u>.  Except as otherwise expressly set forth in this Contract, any covenants, representations, warranties and other agreements set forth in this Contract shall not survive the Closing and shall merge into the Deed to be delivered by Seller to Buyer at Closing.

11.24   **<u>JURY WAIVER</u>.  BUYER AND SELLER DO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THEIR RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, OR UNDER OR IN CONNECTION WITH THIS CONTRACT, THE DOCUMENTS DELIVERED BY BUYER AT CLOSING OR SELLER AT CLOSING, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ANY ACTIONS OF EITHER PARTY ARISING OUT OF OR RELATED IN ANY MANNER WITH THIS CONTRACT OR THE PROPERTY (INCLUDING WITHOUT LIMITATION, ANY ACTION TO RESCIND OR CANCEL THIS CONTRACT AND ANY CLAIMS OR DEFENSES ASSERTING THAT THIS CONTRACT WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER IS A MATERIAL INDUCEMENT FOR SELLER AND BUYER TO ENTER INTO AND ACCEPT THIS CONTRACT AND THE DOCUMENTS DELIVERED BY SELLER AND BUYER AT CLOSING AND SHALL SURVIVE THE CLOSING OF TERMINATION OF THIS CONTRACT.**

[SIGNATURE PAGE FOLLOWS]

     **IN WITNESS WHEREOF**, the parties have executed this Contract on the dates set forth below.

<div style="margin-left:40%">

SELLER:

**FICO FINANCIAL CORP.**, a Florida corporation


By:_____
Print Name:_____
Print Title:_____


Date:    _____ ____, 2021


BUYER:

_____, a _____



By:_____
Print Name:_____
Print Title:_____


Date:    _____ ____, 2021

</div>

## <u>JOINDER BY ESCROW AGENT</u>

Buchanan Ingersoll & Rooney PC joins in this Contract for the purposes of agreeing to act as the Escrow Agent in accordance with the terms contained in this Contract.

<u>ESCROW AGENT</u>:

BUCHANAN INGERSOLL & ROONEY PC

By: _____
Name: _____
Title: _____

Date:    _____ ____, 2021

**EXHIBIT A**
**REAL PROPERTY LEGAL DESCRIPTION**

Commence at the Northeast corner of Government Lot 1, Section 19, Township 29 South, Range 18 East, Hillsborough County, Florida; thence N 89°01'01" W, 3,396.77 feet along the north boundary of said Section 19 to the POINT OF BEGINNING; thence S 00°58'59" W, 492.00 feet; thence N 89°01'01" W, 293.70 feet; thence N 00°58'59" E, 492.00 feet to said North line of Section 19; thence along said North line S 89°01'01" E, 293.70 feet to the POINT OF BEGINNING.

**EXHIBIT B**
**EXCLUDED PERSONAL PROPERTY**

[to be inserted]

## EXHIBIT C
## ESCROW CONDITIONS

(a)    The Escrow Agent shall be Buchanan Ingersoll & Rooney PC. Escrow Agent agrees to hold in escrow and disburse the Deposit (subject to clearance of funds), in accordance with terms and conditions of this Contract, the Bid Procedures Order, and the Bidding Procedures. Failure of the clearance of funds shall not excuse the performance by Buyer of this Contract. All checks, money orders or drafts, if any, will be processed for collection in the normal course of business. Escrow Agent shall deposit the Deposit in its general trust account with SunTrust Bank (the "***Bank***"), Escrow Agent's designated depository institution, and may commingle the Deposit with escrow funds of others. Any interest earned on the Deposit shall be subject to the IOTA Rules of The Florida Bar and such interest shall not be payable to Seller, Buyer or Escrow Agent. Escrow Agent shall be under no duty or obligation to give any notice, or to take or omit to take any other action with respect to the Deposit, except to make disbursements in accordance with the terms of this Contract and Court Order. Seller and Buyer confirm that Escrow Agent has informed them of the Bank in which the Deposit will be held, and Seller and Buyer expressly agree that each accepts the selection of the Bank as the depository institution for the Deposit.

(b)    Escrow Agent shall release the Deposit in accordance with the terms of this Contract. Escrow Agent may demand a signed consent by both Buyer and Seller before Escrow Agent will release Deposit, failing which Escrow Agent may interplead Deposit as provided below. Escrow Agent's obligations under this Contract shall terminate when the entire Deposit has been released in accordance with this Contract or when Escrow Agent has resigned in accordance with this Section (c) below.

(c)    Escrow Agent may resign at any time upon the giving of fifteen (15) days' written notice to Seller and Buyer. In such event, Seller and Buyer shall make good faith efforts to agree upon a successor escrow agent. If a successor escrow agent is not appointed within fifteen (15) days after notice of such resignation, Escrow Agent may petition any court of competent jurisdiction to name a successor escrow agent and, upon the transfer of and new accounting for the Deposit to the successor escrow agent either designated by Seller and Buyer (together) or appointed by the court, Escrow Agent shall be fully relieved of all liability under this Contract to any and all parties. If Escrow Agent files an action or petitions the court as aforesaid, Buyer and Seller, jointly and severally, agree to indemnify and hold Escrow Agent harmless from any and all liability, costs, expenses, and attorneys' fees, at trial and appellate level, that Escrow Agent incurs in connection with such action.

(d)    Buyer and Seller shall jointly and severally indemnify and hold Escrow Agent (including officers, directors, partners, shareholders, employees and agents) harmless from and against any liability, loss, damage or expense (including, without limitation, reasonable and documented attorneys' fees) that Escrow Agent may incur in connection with any services related to work as Escrow Agent under this Contract, except to the extent such liability, loss, damage or expense arises from its willful misconduct or gross negligence. The indemnification provided for under this Section (d) shall survive the termination of this Contract and the resignation or removal of Escrow Agent.

(e)      In the event that conflicting demands are made on Escrow Agent, or Escrow Agent, in good faith, believes that any demands with regard to the Deposit are in conflict or are unclear or ambiguous, Escrow Agent may bring an interpleader action in the Bankruptcy Court.   All reasonable costs and attorneys' fees incurred by Escrow Agent in connection with any such interpleader may be deducted by Escrow Agent from the Deposit prior to its deposit into the registry of the court subject to and after Court approval.   In any event, however, Escrow Agent may lay claim to or against the Deposit for its reasonable costs and attorneys' fees in connection with same, or in connection with any other litigation brought by any party in which Escrow Agent has been named a party, through final appellate review.

(f)      The parties acknowledge and agree that: (i) Seller's attorney is acting as Escrow Agent with respect to the Deposit; (ii) Seller's attorney may also obtain advice from his own firm about this Contract or Escrow Agent's duties hereunder; and (iii) Seller's attorney also represents the Bank in matters unrelated to this Contract.   The representations and relationships described in the previous sentence shall not for any reason serve as a basis to prevent, disqualify or otherwise result in such counsel not being able to continue to represent the above described parties in such matters. The parties agree that any conflict of interest is expressly waived with respect to Escrow Agent's representation of Seller in connection with this Contract, or Escrow Agent's representation of itself with respect to this Contract or its representation of the Bank in matters unrelated to this Contract. The agreements and waivers set forth in this paragraph shall survive the termination or expiration of this Contract.

(g)      Buyer and Seller each represents severally and not jointly that it (i) is not a person or entity whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (ii) does not engage in any dealings or transactions prohibited by Section 2 of such executive order, or is not otherwise associated with any such person or entity in any manner violative of Section 2 of such order, or (iii) is not a person or entity on the list of Specially Designated Nationals or Blocked Persons or is not in violations of the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order.   Buyer and Seller each agree to provide, at the request of the Escrow Agent, such other information as may be reasonably required by the Bank in connection with the foregoing representations.

**EXHIBIT D**
**RENT ROLL**

[to be inserted]

**EXHIBIT E**
**TRUSTEE'S DEED**

THIS INSTRUMENT PREPARED BY
AND RECORD AND RETURN TO

_____
_____
_____
_____

| FOR USE BY RECORDING OFFICE

**TRUSTEE'S DEED**

THIS TRUSTEE'S DEED, is made this ____ day of _____, 202_, by **FICO FINANCIAL CORP.**, a Florida corporation, as debtor in possession of the estate of Fico Financial Corp., a debtor in the case styled _In re Parusa Investment Corporation and In re Fico Financial Corporation_, Case No. 8:21-bk-03854-MGW and Case No. 8:21-bk-03853-MGW respectively (jointly administered under 8:21-bk-03854-MGW) in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division ("**Grantor**"), whose post office address is _____, to _____, a _____ ("**Grantee**"), whose post office address is _____.

**W I T N E S E T H:**

Grantor, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration paid by Grantee, the receipt and sufficiency of which are hereby acknowledged, has granted, bargained and sold, and by these presents does grant, bargain and sell, to Grantee, Grantee's successors and assigns, as appropriate, forever, the following property situate in Hillsborough County, Florida, to-wit (the "**Property**"):

See **Exhibit A** attached hereto and made a part hereof.

**TOGETHER** with all the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining.

**THIS CONVEYANCE** is subject to the matters set forth on **Exhibit B** (the "**Permitted Exceptions**").

**TO HAVE AND TO HOLD**, the same in fee simple forever.

22

**It is expressly understood and agreed between the parties that Grantee had adequate opportunity to inspect the Property and that the same is being purchased "AS-IS" with no warranty, express or implied, from Grantor. Grantee releases, indemnifies, and holds harmless the Grantor from claims arising from acts or occurrences after the date of this Deed whether based on Grantor's negligence in whole or in part and/or claims based upon strict liability and/or product liability with respect to the physical properties or condition of the Property, including the environmental condition of the Property. Grantee and its successors and assigns have and shall be deemed to have assumed all risk and liability with respect to the presence or remediation of all known and unknown toxic or hazardous substances, materials, or waste or other actual or potential environmental contaminates on, within or under the surface of the Property, including both known or unknown apparent, not apparent or latent, and whether existing prior to, at or subsequent to, transfer of the Property to Grantee.**

[signature is on the following page]

**IN WITNESS WHEREOF,** Grantor has executed this Trustee's Deed as of the day and year first above written.

Signed, sealed and delivered
in the presence of:                                    **GRANTOR:**

**WITNESSES:**                                        **FICO FINANCIAL CORP.**, a Florida
                                                      corporation

_____
Print Name:_____

_____          _____
_____          Name:  _____
Print Name:_____          Title:  _____

STATE OF FLORIDA               )
                               ) ss:
COUNTY OF _____          )

     The foregoing instrument was acknowledged before me by means of _____ physical presence or _____ online notarization, this _____ day of _____, 2021 by _____, as _____ of **FICO FINANCIAL CORP.**, a Florida corporation on behalf of said corporation.  He is personally known to me or has produced _____ as identification.

[NOTARIAL SEAL]

                                   _____
                                   NOTARY PUBLIC, STATE OF FLORIDA

                                   _____
                                   Print Notary Public's Name

                                   My Commission Expires:_____

**EXHIBIT A TO TRUSTEE'S DEED**
**LEGAL DESCRIPTION**

[to be inserted]

**EXHIBIT B TO TRUSTEE'S DEED**
**PERMITTED EXCEPTIONS**

1. Taxes and assessments for the year 202_ and subsequent years, which are not yet due and payable.

2. Rights of tenants, as tenants only, under written leases.

3. Environmental, building, zoning and other laws, rules, regulations, ordinances or bylaws that may affect the use, maintenance or ownership of the Property.

4. All reservations, restrictions, limitations, declarations, easements, and other matters of public record.

5. Matters which would be disclosed by an accurate and comprehensive survey of the Property.

**EXHIBIT F**
**BILL OF SALE**

KNOW ALL MEN BY THESE PRESENTS, that on _____ ___, 202__, **FICO FINANCIAL CORP.**, a Florida corporation ("**Seller**"), for and in consideration of the sum of Ten Dollars ($10.00) lawful money of the United States, paid by _____, a _____ ("**Buyer**"), to Seller the receipt whereof is hereby acknowledged, has granted, bargained, sold, transferred and delivered, and by these presents does grant, bargain, sell, transfer and deliver unto Buyer and the successors and assigns thereof, all appliances, trade or moveable fixtures, equipment, machinery, furniture, furnishings, decorations, and other tangible personal property located at the Property (as such term is defined in the Real Estate Purchase Contract, as may be amended, between Buyer and Seller) owned by Seller and all immoveable fixtures (collectively, the "**Personal Property**").

TO HAVE AND TO HOLD the same unto the Buyer and the executors, administrators, successors and assigns thereof forever.

AND Seller for itself and the heirs, executors, administrators, successors and assigns thereof, covenant to and with the Buyer, the executors, administrators, successors and assigns, that Seller is the owner of the Personal Property; that they are free from all encumbrances; and that Seller has good right to sell the same aforesaid free and clear of all liens, claim or encumbrances.

**It is expressly understood and agreed between the parties that Buyer had adequate opportunity to inspect the Personal Property and that the same is being purchased "AS-IS" with no warranty, express or implied, from Seller, as to the suitability thereof for any activity or use or particular purpose, fitness, merchantability, design, condition, capacity, performance, or any other aspect of the Personal Property or its material or workmanship; or as to compliance of the Personal Property with any laws, rules, ordinances or regulations of any governmental authority, environmental or otherwise.  Buyer releases, indemnifies, and holds harmless the Seller from claims arising from acts or occurrences after the date of this Bill of Sale whether based on Seller's negligence in whole or in part and/or claims based upon strict liability and/or product liability with respect to the physical properties or condition of the Personal Property, including the environmental condition of the Personal Property.  Buyer and its successors and assigns have and shall be deemed to have assumed all risk and liability with respect to the presence or remediation of all known and unknown toxic or hazardous substances, materials, or waste or other actual or potential environmental contaminates on, within or under the surface of the Personal Property, including both known or unknown apparent, not apparent or latent, and whether existing prior to, at or subsequent to, transfer of the Personal Property to Buyer.**

[signature page follows]

IN WITNESS WHEREOF, Seller and Buyer have executed this Bill of Sale on the day and year first above written.

SELLER:                                      BUYER:


**FICO FINANCIAL CORP.**, a Florida          _____
   corporation


By:_____          By:_____
Print Name:_____           Print Name:_____
Print Title:_____          Print Title:_____

**EXHIBIT G**
## ASSIGNMENT AND ASSUMPTION OF LEASES
## AND OTHER INTANGIBLE PROPERTY

THIS ASSIGNMENT AND ASSUMPTION OF LEASES AND INTANGIBLE PROPERTY (this "**Assignment**") is dated _____ ____, 2021 by and between **FICO FINANCIAL CORP.**, a Florida corporation ("**Assignor**") and _____, a _____ ("**Assignee**").

WHEREAS, the parties have entered into that certain Real Estate Purchase Contract dated as of _____ _____, 2021 ("**Contract**"), wherein Assignor agreed to sell and Assignee agreed to buy the "Property" described in the Contract; and

WHEREAS, Assignee desires to assume and Assignor desires to assign to Assignee the leases currently existing on the Property ("**Leases**"), and other Intangible Property, as such term is defined in the Contract, including but not limited to all contracts, permits, licenses, and warranties that are listed on **Schedule 1**, attached hereto and incorporated herein, on the terms provided herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed as follows:

1.    Effective as of the Effective Date, Assignor hereby fully and forever assigns and transfers to Assignee all of Assignor's right, title, and interest, as landlord, to the Leases and other Intangible Property, including the contracts, permits, licenses, and warranties listed on **Schedule 1**, free and clear of all liens, claims and encumbrances (other than Permitted Exceptions, as defined in the Real Estate Purchase Contract).

2.    Assignee hereby assumes, and agrees to keep, perform, pay and discharge, any and all duties, liabilities and obligations of Assignor under the Leases and other Intangible Property listed on **Schedule 1** and Assignee hereby agrees to indemnify, protect, defend and hold Assignor and its partners, officers, employees, attorneys, representatives and agents harmless from and against any claims, suits, damages, liability, costs and/or expenses arising out of or resulting from any breach of or default in the performance of any of the duties, obligations or liabilities of Assignor under the Leases and other Intangible Property listed on **Schedule 1** from and after the Effective Date.

3.    This Assignment may be executed in any number of counterparts, each of which shall be deemed an original, and all of which, together shall constitute one and the same instrument.

4.    This Assignment shall be governed by in all respects, including validity, interpretation and effect, and construed in accordance with the laws of the State of Florida and the United States Bankruptcy Code.

5.    This Assignment shall inure to the benefit of and be binding upon and enforceable against Assignor and Assignee and their respective heirs, devisees, estates, executors, successors, and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the date first above written.

ASSIGNOR                                          ASSIGNEE

**FICO FINANCIAL CORP.**, a Florida    _____
 corporation

By:_____          By:_____
Print Name:_____          Print Name:_____
Print Title:_____          Print Title:_____

30

## SCHEDULE 1
## TO ASSIGNMENT AND ASSUMPTION
## OF LEASES AND OTHER INTANGIBLE PROPERTY

**The Leases:**

[To be completed]

**The Assigned Service Contracts:**

[To be completed]

**List of Permits, Licenses, and Warranties, etc.:**

[To be completed]

**EXHIBIT H**
**TENANT NOTICE LETTER**

_____, 202\_

_____
_____
_____

Ladies and Gentlemen:

This is to advise you that effective _____, 202\_\_ the property located at _____, has been sold to _____.

All payments of rent and other charges due under your lease, including the next scheduled installment of rent, should now be paid as directed by _____.  Please make your rent checks payable to _____, and deliver all rent to the following address:

_____
_____
_____

If you have any questions concerning this notice, please feel free to contact _____ at telephone number _____ or email address _____.

Very truly yours,

_____

By:_____
Name:_____
Title:_____

32

**EXHIBIT I**
**ASSIGNED SERVICE CONTRACTS**

[to be inserted]